THE COUNTY OF CERRO GORDO v. THE COUNTY OF WRIGHT.

1. Settlement: RESIDENCE. The residence in a county necessary to establish a settlement therein must be personal presence in a fixed and permanent abode, or of a character indicating permanancy of occupation, as distinct from lodging, boarding, or temporary occupation.

2. ———: ———: BOARD OF SUPERVISORS. Before an action can be maintained against a county upon an unliquidated claim, the same must have been presented to the board of supervisors, and payment refused by them.

3. ———: NOTICE. Where a person having a legal settlement in one county becomes sick and disabled in another, a notice by the auditor of the latter to the auditor of the former that relief is being furnished, is sufficient to charge the county in which the pauper has a settlement.

The County of Cerro Gordo v. The County of Wright.

*Appeal from Franklin District Court.*

WEDNESDAY, APRIL 9.

ACTION for the recovery of certain sums of money which it is alleged were expended by plaintiff in the support and medical attendance of a pauper who, it is alleged, had a legal settlement in Wright county at the time such support and medical attendance were furnished. There was a trial by jury, and a verdict and judgment for the plaintiff. Defendant appeals.

*N. F. Weber* and *Miracle & Kamrar*, for appellant.

*F. M. Goodykoontz* and *King & Henley*, for appellee.

ROTHROCK, J.—I. The pauper to whom the aid was furnished by the plaintiff was a woman, named Hattie May Bennett. She came from Illinois to Wright county in December, 1874, and remained there until March, 1876, when she went to Cerro Gordo county. Shortly afterward she was taken sick, and the support for which this action was brought was furnished during the summer of 1876. One of the principal points in controversy upon the trial was whether the pauper had a legal settlement in Wright county before her removal to the county of Cerro Gordo. Upon this question the defendant asked the court to instruct the jury as follows:

1. SETTLEMENT: residence.

"Mere lapse of time, without more, will not establish the settlement of a poor person in a county, but the removal to a county must have been *bona fide*, and with the intention of becoming a citizen and gaining a settlement in such county; and unless you find from the evidence that the said Hattie May Bennett removed to Wright county with the purpose and intention of gaining a residence and settlement in the county, you will find for the defendant, even though you find that she had a residence in the county for more than one year."

This instruction was refused, and the following instruction was given:

"4.   The first question for the jury to determine is, did the pauper Hattie May Bennett have a settlement in Wright county at the time the alleged relief was given? In order to constitute a settlement in Wright county of the alleged pauper, Hattie May Bennett, the jury must find from the evidence that she had resided in Wright county one year or more prior to her locating in or going to Cerro Gordo county."

We think the instruction asked was properly refused, because, although the pauper may not have intended at the time of her removal to Wright county to become a resident of that county, yet she may have after her removal, and more than a year before she went into Cerro Gordo county, made her home in Wright county, in such way as to have gained a legal settlement. If her living in that county for one year before she left it was in such manner as to evince an intention to make her home there, she was a resident, notwithstanding she may have come from Illinois as a visitor or sojourner.

The court gave no other instruction upon the subject of residence aside from that above quoted, and while it may be correct as an abstract proposition of law, yet by failing to explain to the jury what constituted a residence we think they were left to grope their way in the dark in considering that question.   There was evidence introduced upon that branch of the case which demanded consideration.   It was shown that when Hattie May Bennett came to Wright county from Illinois she avowed an intention only to make a visit to her friends and relatives, and one or two of her relatives testified that she never in their hearing declared her intention to be otherwise.   On the other hand it was shown that while she remained in Wright county she went to school and worked out as a servant girl, and that she remained there some fifteen months, and only went into Cerro Gordo county because she had an opportunity to obtain work there.   Under these cir-

cumstances it was highly proper that the court should have defined the character of inhabitancy which constitutes residence. It is true the Code (§ 1352) provides that persons residing in the State one year, without being married, gain a settlement in the county of their residence; but what constitutes residence is not defined by statute. It should have been defined to the jury as "personal presence in a fixed and permanent abode" (20 Johnson, N. Y., 208; 1 Metcalf, Mass., 251), or that it indicates permanency of occupation as distinct from lodging, or boarding, or temporary occupation. 19 Maine, 293; 2 Kent's Com., 576. That such is its significance in this State see *Hinds v. Hinds*, 1 Iowa, 36.

II. The defendant further requested the court to instruct the jury as follows, which instruction was refused:

"4. Under our statute before any action can be brought against any county upon an unliquidated demand the same

2. ——: ——: must have been presented to the board of super-
board of su-
pervisors.      visors of such county and payment demanded.
In the case at bar the claim is an unliquidated claim, and, there being no evidence showing or tending to show that the claim was presented to the board of supervisors of the county of Wright before the commencement of this suit and payment demanded, you are directed to return a verdict for the defendant."

This instruction should have been given. A careful examination of the abstract fails to disclose any evidence whatever that the demand was ever presented to the board of supervisors of Wright county and payment demanded, as required by section 2610 of the Code. That the claim was unliquidated—that is, not settled and not adjusted—admits of no question. Counsel for appellee insists that there was evidence tending to show that the claim was presented to the board of supervisors, and payment demanded, and refers to certain letters which were written by the auditors of the respective counties to each other. These letters were written before the demand had all accrued; at least, long before the accounts

were audited and paid by Cerro Gordo county. They were only intended as giving the notice required by section 1357 of the Code.

III. It is urged that there was no evidence that the plaintiff, within a reasonable time after the county of the settlement was ascertained, gave the defendant notice of relief being furnished, so as to charge the county, as provided in section 1357 of the Code. An instruction to this effect was asked, which was refused. An examination of the evidence satisfies us this action of the court was correct. It was shown that the auditor of Cerro Gordo county gave the proper notice to the auditor of Wright county that the relief was being furnished. This, we think, was sufficient. It surely cannot be claimed, where a person having a legal settlement in one county becomes sick and disabled in another, that it is necessary to convene the boards of supervisors of both counties in order that notice may be given so that the proper county may be charged with the aid furnished.

*3. ——: notice.*

For the errors above pointed out the judgment of the court below is reversed, and the cause remanded.

REVERSED.