**COUNTY OF RAMSEY and Ramsey County Welfare Board, Respondents,**

v.

**COUNTY OF SHERBURNE and Sherburne County Welfare Board, Appellants.**

**No. 49244.**

Supreme Court of Minnesota.

Aug. 3, 1979.

---

John E. MacGibbon, County Atty., and Robert B. Danforth, Asst. County Atty., Elk River, for appellants.

Tom W. Foley, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, for respondents.

Heard before OTIS, PETERSON, and KELLY, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Defendants, County of Sherburne and Sherburne County Welfare Board, appeal from summary judgment by the Ramsey County District Court, holding the County of Sherburne to be the county of financial responsibility under Minn.St. 256D.18 of Virginia Samdahl and reimbursing plaintiffs, County of Ramsey and Ramsey County Welfare Board, for expenses incurred in Virginia's child welfare relief. We affirm.

The factual issues are undisputed. Virginia was born on June 19, 1960, and approximately 5 months later was adopted by Russell and Mary Samdahl. In June 1973, Virginia, her brother, and her parents moved from California to a farm in rural Sherburne County, Minnesota, where they lived with Virginia's uncle. In California, a series of misfortunes had rendered the Samdahls destitute. Virginia's father, an engineer, had lost his job because of an aircraft industry layoff and was otherwise unemployable because of four back surgeries. Virginia's mother was recovering from a stroke which had hospitalized her for 17 weeks and virtually drained the Samdahls' financial resources. Virginia's parents intended to live in Sherburne County and hoped to establish a business on the farm.

Approximately 2 or 3 weeks after their arrival at the farm in Sherburne County, Virginia's parents decided to take a 2-week trip to the East Coast. Virginia's brother was capable of caring for himself, but Virginia presented a problem. She was 13 years old at the time and had been subject to behavioral problems all her life. She was hyperactive and often antisocial, and her parents had always had difficulty coping with her emotional problems. While Virginia's parents were in the East, Virginia's aunt, Phyllis Wilcox, and her husband cared for Virginia at their home in Ramsey County. The Wilcoxes' care of Virginia was to be temporary. Virginia's parents were to resume custody of her upon their return. While in the East, the physical condition of Virginia's mother severely deteriorated. When it became clear that her condition would prevent her from supervising Virginia in the Sherburne County farm's spartan setting, the Wilcoxes volunteered to continue to provide Virginia with temporary care and supervision, including room and board and the opportunity for Virginia to attend school. No financial arrangements were made nor was a formal understanding entered into between the Samdahls and the Wilcoxes.

Virginia lived with the Wilcoxes for nearly 2 years, during which time Virginia's parents provided no financial support to her. Virginia never returned to Sherburne County, and Virginia's parents never lived in Ramsey County.

In April 1975, the Wilcoxes decided Virginia's problems were beyond their control.

A Ramsey County social worker, in cooperation with the Sherburne County Welfare Department and with consent of Virginia's parents, arranged foster care for Virginia. In October 1975, Virginia was placed by plaintiffs' agents in a foster home in Hennepin County. On December 6, 1977, Virginia moved to a foster home in Ramsey County. Virginia left the foster home in Ramsey County on January 8, ·1978, and went to live with her parents, who had then moved to Hennepin County. Plaintiffs brought the present action to obtain reimbursement from defendants for welfare relief expenses incurred by plaintiffs in Virginia's care, commencing in April 1975 and continuing through the early months of 1978.

The district court found that Virginia's placement with the Wilcoxes in Ramsey County was intended by all the parties to be temporary, that at no time was Virginia abandoned by her parents, and that at no time did Virginia become emancipated. The issue before this court is whether the finding sufficiently established that the county of residence of Virginia's parents, Sherburne County, was Virginia's "county of financial responsibility" under § 256D.18.

Subdivisions 1 and 2(a) of § 256D.18 are the statutory provisions relevant to the present case. Subdivision 1 provides: "In determining the county of financial responsibility, in all matters concerning legal settlement of the poor, the definitions and rules of this section shall apply." Subdivision 2(a) defines "county of financial responsibility" as "the county in which an individual resides."

Defendants' basic argument is that the legislature, by use of the word "resides," intended to establish that the legal settlement of an individual is the county in which the individual is bodily present and that because the word "individual" is used, there is to be no distinction drawn between adults and minors. Defendants therefore contend that the residence of an unemancipated, unabandoned minor for legal settlement purposes is the county in which the minor is physically present and that the district court's judgment was erroneous because Virginia's physical presence in Ramsey County, away from her parents' home, at the time she was placed in foster care compelled a finding that Ramsey County was Virginia's county of financial responsibility.

We are not persuaded by defendants' argument. In deciding the locale ultimately responsible for providing relief for the poor, minor children have traditionally been considered a class of persons incapable of obtaining legal settlement by their own actions and have been granted what is termed "derivative settlement," whereby settlement of the parents determines the settlement of an unemancipated minor. 79 Am.Jur. (2d) Welfare Laws, § 64. We find no indication in the wording of the statute that the legislature intended to change this common-law rule. Section 256D.18, subd. 2(a), does not specifically refer to minors. If the legislature had intended to change traditional law, we believe it would have explicitly signaled its intention. The language used in § 256D.18, subd. 2(a), is general in scope and the common law should be referred to as an aid in interpreting the statute. The common law indicates an unemancipated and unabandoned minor's legal settlement under § 256D.18, subd. 2(a), should be derived from the legal settlement of his parents. In this case, there is no question that Sherburne County is the county of financial responsibility of Virginia's parents.

For similar reasons, we do not deem it determinative that the present statute was preceded by Minn.St.1971, § 261.07, a statute containing a specific and detailed subdivision dealing with the legal settlement of minors, including the general rule that the legal settlement of parents determines the legal settlement of an unemancipated minor.[1] The language used in Minn.St.

1. Minn.St.1971, § 261.07, subd. 3, provided: "Every minor not emancipated and settled in his own right and not under guardianship of

the commissioner of public welfare, or one of the state institutions as a mentally deficient, delinquent, or dependent person shall have the

256D.18, subd. 2(a), is general and broad in scope. No specific mention is made of minors. It is unclear from the language of subd. 2(a) that minors are to be considered equal to adults, particularly because many laws make a distinction between minors and adults or children and their parents. It is also unclear that the legislature intended, by supplanting Minn.St.1971, § 261.07, with the present statute, Minn.St. 256D.18, to eliminate the common-law rule of deriving the settlement of an unemancipated minor from the settlement of his parents. Without clear evidence, we refuse to imply such legislative intent.

■ Additionally, in determining the county of financial responsibility of an individual under § 256D.18, subd. 2(a), the legislature intended that there exist a stronger connection between a county and an individual than simply the physical presence of the individual in the county. The legislative intent in poor relief statutes is to assess the expense and responsibility of the poor relief of an individual to that county in which the individual lived, the county which received the benefits of the individual's residence before he became in need of public assistance. See, *In re Settlement of Beaulieu,* 264 Minn. 406, 410, 119 N.W.2d 25, 29 (1963). A stronger connection must exist between a county and an individual than the bare fact that an individual is physically present in the county. This is especially true when an unemancipated and unabandoned minor is involved.

■ In the present case, Virginia was temporarily living in Ramsey County because her parents believed it was best for her to remain with the Wilcoxes. Despite their financial and medical problems, the Samdahls were still a family, and Virginia was still legally under her parents' control. The decision to live in Ramsey County was not a choice made by Virginia. At the time she was placed in the foster home, Virginia was living in Ramsey County because her parents had decided that it was best for her to temporarily remain with the Wilcoxes, certainly not the degree of commitment and connection between an individual and a county necessary under § 256D.18 to establish Ramsey County as Virginia's county of financial responsibility.

Affirmed.

---

same settlement as the parent with whom he has resided. Every child born in a state institution shall have a settlement in the county in which the mother had a legal settlement at the time she was committed to such institution. Every minor not emancipated and settled in his own right and living apart from his parents and not supported by his parents shall, after receiving aid and support from others uninterruptedly for a period of one year, acquire the settlement of the person with whom he has resided for a period of not less than one year. Every minor, living apart from his parents and supporting himself for an uninterrupted period of one year, shall be considered emancipated and thereafter capable of acquiring a settlement in his own right. A married woman abandoned or deserted by her husband for a period of one year continuously shall thereafter have the same right to acquire a new settlement as a single person."

As a result of legislative revision of the Law on Public Assistance, L.1973, c. 650, as amended by L.1974, c. 297, § 261.07, dealing with poor relief, was repealed and supplanted by the present statute, Minn.St. 256D.18, effective January 1, 1974, and as amended on March 28, 1974.