Patrick E. HOSLEY, et al.,
petitioners, Appellants,

v.

ARMSTRONG CORK COMPANY, et al., Defendants,

Pittsburgh Corning
Corporation, Respondent.

No. C6-84-1209.

Supreme Court of Minnesota.

March 14, 1986.

---

**290**

Richard A. LaVerdiere, Hastings, for appellants.

Eugene D. Buckley, Patrick T. Tierney, Mark W. Gehan, Jr., St. Paul, for respondent.

SCOTT, Justice.

The defendants represent 13 manufacturers of asbestos products to which plaintiff Patrick Hosley was exposed during his employment as an insulator. He contends that his exposure to the asbestos products caused him to contract asbestosis. Two of the defendants, Johns-Manville Corporation and Unarco Industries, filed petitions, after the commencement of Hosley's suit, for reorganization under Chapter 11 of the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549 (1978) (codified at 11 U.S.C. §§ 101–151326 (1982)). Pursuant to the Act's automatic stay provision, 11 U.S.C. § 362(a) (1982), the Hennepin County District Court stayed the proceedings. Thereafter, upon Hosley's motion, the trial court severed all the claims asserted against Johns-Manville and Unarco and all the claims asserted by them against third parties. The court allowed Hosley to proceed to trial against the remaining defendants. Subsequently, all of these defendants, except Pittsburgh Corning Corporation, settled on *Pierringer* releases. The trial continued with respondent Pittsburgh Corning as the sole defendant.

At the conclusion of the trial, the court permitted the jury to consider the fault of all the parties who contributed to Hosley's injury. It submitted the fault of nine parties, including Hosley, to the jury, instructing it to apportion fault. The jury awarded Hosley $350,000, and allocated fault as follows:

| Plaintiff Patrick Hosley | 7% |
|---|---|
| Celotex Corporation | 5% |
| Eagle-Picher Industries, Inc. | 9% |
| Fibreboard Corporation | 15% |
| Forty-Eight Insulation, Inc. | 5% |
| Johns-Manville Sales Corporation | 25% |
| MacArthur Corporation | 9% |
| Owens-Corning Fiberglas Corporation | 15% |
| Pittsburgh Corning Corporation | 10% |
| | 100% |

The trial court reduced the $350,000 award by $227,500, an amount representing the percentage of fault attributed to the *Pierringer*-released defendants (58 percent) and the percentage of fault attributed to Hosley (7 percent) ($203,000 + $24,500). The court concluded that Pittsburgh Corn-

ing and Johns-Manville were jointly liable and thus Pittsburgh Corning was ordered to pay $122,500, an amount that represented the combined percentages of fault attributed to Pittsburgh Corning (10 percent) and Johns-Manville (25 percent) ($35,000 + $87,500).

The court, however, stayed $8,166.67 of the total judgment of $122,500, applying the reallocation provision of section 604.02, which provides:

> Upon motion made not later than one year after judgment is entered, the court shall determine whether all or part of a party's equitable share of the obligation is uncollectible from that party and shall reallocate any uncollectible amount among the other parties, including a claimant at fault, according to their respective percentages of fault. A party whose liability is reallocated is nonetheless subject to contribution and to any continuing liability to the claimant on the judgment.

Minn.Stat. § 604.02, subd. 2 (1984).[1]

On appeal to the Minnesota Court of Appeals, Pittsburgh Corning contended that it should not assume responsibility for that portion of the damages attributed by the jury to Johns-Manville ($87,500) because, by executing a *Pierringer* release, Hosley destroyed joint liability among the remaining nonsettling defendants. Pittsburgh Corning further argued that if it were required to pay Johns-Manville's share of the judgment, under the reallocation provision, Minn.Stat. § 604.02, subd. 2, it would have a right of contribution against the other defendants. It noted that because Hosley, in the *Pierringer* settlements with the other defendants, agreed to indemnify these defendants, it would have a right of contribution against Hosley.

The court of appeals determined that Hosley, by executing *Pierringer* releases, did not destroy joint liability between the nonsettling defendants, Pittsburgh Corning and Johns-Manville. Thus Pittsburgh Corning was responsible for $122,500. The appellate court further concluded that because Johns-Manville was severed from the suit, it was not a "party" within the meaning of the reallocation provision of section 604.02, and thus the percentage of fault attributed to it by the jury could not be reallocated to Hosley or the other defendants—Pittsburgh Corning was responsible for Johns-Manville's total share. Accordingly, the trial court's stay of $8,166.67 of the $122,500 award was reversed. The court of appeals held, however, that Pittsburgh Corning was entitled to "equitable contribution" from the settling defendants who were more-at-fault than Hosley for that portion of the verdict attributed by the jury to Johns-Manville. Pursuant to the *Pierringer* releases, Hosley would be required to pay any contribution claims against the settling defendants; however, the appellate court reasoned:

> It would be inequitable to deny the company [Pittsburgh Corning Corporation] contribution against the settling Defendants more-at-fault than Hosley merely because Hosley would ultimately pay the contribution claims. That is precisely what Hosley contracted to do. It is an expected consequence of the *Pierringer* settlements.

*Hosley v. Armstrong Cork Co.,* 364 N.W.2d 813, 817 (Minn.Ct.App.1985).

Pittsburgh Corning challenges the appellate court's conclusion that joint liability is not waived as to nonsettling defendants once a *Pierringer* release is entered into with other defendants. It also appeals the court's holding that the reallocation provision of section 604.02 is inapplicable to this

---

1. Without reaching the issue of whether Johns-Manville's obligation was truly uncollectible under the reallocation statute, the trial court calculated what the reallocated shares would be for each of the parties if Johns-Manville's obligation should, at some later date, be determined to be uncollectible by a court. The trial court then stayed entry of Hosley's share of the obligation in order to avoid requiring Hosley to pay back part of the judgment he received from the defendants if it is actually determined at a later date that Johns-Manville's obligation is uncollectible.

case. Hosley petitions this court to review the appellate court's determination concerning equitable contribution.

We granted the petition for further review and discuss (1) whether a plaintiff's settlement with some defendants through *Pierringer* releases waives joint liability among all defendants, and (2) whether Minn.Stat. § 604.02, subd. 2, should be applied to reallocate a severed defendant's share of the judgment.

■ 1. It is a well-established rule in Minnesota that parties whose negligence concurs to cause an injury are jointly and severally liable. We have consistently applied this common law doctrine of joint and several liability to the statutory scheme of comparative negligence and comparative fault, concluding that the legislature retained the doctrine in enacting the comparative negligence statute in 1969 and the comparative fault statute in 1978. The current comparative fault statute provides: "When two or more persons are jointly liable, contributions to awards shall be in proportion to the percentage of fault attributable to each, except that each is jointly and severally liable for the whole award." Minn.Stat. § 604.02, subd. 1 (1984).

Pittsburgh Corning urges us to adopt an exception to the general applicability of joint and several liability in cases arising under the comparative fault scheme. It argues that the doctrine of joint and several liability is inapplicable to this case because, upon executing *Pierringer* releases with some of the defendants, Hosley waived joint liability among the nonsettling defendants, Pittsburgh Corning and Johns-Manville.

Such a waiver of joint and several liability, however, does not result from the *Pierringer* release itself. The release, first accepted by the Supreme Court of Wisconsin in *Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963), and recognized by this court in *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn.1978), reserves the plaintiff's

right to maintain a cause of action against any nonsettling defendant, but releases from liability any defendant who is a party to the settlement agreement. The plaintiff also agrees in the release to indemnify the settling defendant against contribution claims made by any nonsettling defendant and to satisfy a judgment the plaintiff receives against any nonsettling defendant to the extent the settling defendant has been released. Joint liability among nonsettling defendants is not expressly waived.

■ We affirm the court of appeals and hold that the plaintiff's settlement with some defendants through *Pierringer* releases does not waive joint liability between all defendants. The retention of the doctrine of joint and several liability in the comparative fault statute demands such a result.

2. Pursuant to Minn.Stat. § 604.02, subd. 2, the trial court reallocated among the parties, including Hosley, the 25 percent fault assigned to Johns-Manville by the jury. The court stayed $8,166.67, Hosley's share of Johns-Manville's obligation. The court of appeals reversed this determination, holding that the reallocation statute was inapplicable. The appellate court noted that the reallocation statute only allows a court to determine whether all or part of a *party's* equitable share of the obligation is uncollectible. Thus, the court reasoned that because Johns-Manville was severed from the suit before trial, it was not a "party" within the meaning of the statute and, therefore, its share could not be reallocated among the other parties.

The appellate court's reasoning is buttressed by what appears to be the legislature's distinction between the words "persons" and "parties" in the comparative fault statute. In discussing joint and several liability in subsection one and reallocation of uncollectible obligations in products liability cases in subdivision three, the legislature used the word persons.[2] In provid-

**2.** Minn.Stat. § 604.02, subd. 1 (1984), provides: When two or more *persons* are jointly liable, contributions to awards shall be in proportion to the percentage of fault attributable to each, except that each is jointly and severally liable for the whole award.

ing for reallocation of uncollectible obligations in cases other than products liability, in subdivision two, the legislature referred to parties, not persons. We have held that such distinctions in language are presumed intentional. *See Transport Leasing Corp. v. State,* 294 Minn. 134, 199 N.W.2d 817 (Minn.1972).

The word "party" in the reallocation statute need not, however, be limited to the restrictive definition "a party to a lawsuit," but instead can be more broadly defined as "a person whose fault has been submitted to the jury," or, in other words, "parties to the transaction." The more restrictive definition may have been implied in the Uniform Comparative Fault Act, on which the reallocation provision of section 604.02 is based. The comment to the reallocation section of the uniform act states:

> The limitation to parties to the action means ignoring other persons who may have been at fault with regard to the particular injury but who have not been joined as parties. This is a deliberate decision. It cannot be told with certainty whether that person was actually at fault or what amount of fault should be attributed to him, or whether he will ever be sued, or whether the statute of limitations will run on him, etc. An attempt to settle these matters in a suit to which he is not a party would not be binding on him. Both plaintiff and defendants will have significant incentive for joining available defendants who may be liable. The more parties joined whose fault contributed to the injury, the smaller the percentage of fault allocated to each of the other parties, whether plaintiff or defendant.

Uniform Comparative Fault Act § 2, comment, 12 U.L.A. 39, 43 (Supp.1985).

Our decision in *Lines v. Ryan,* 272 N.W.2d 896 (Minn.1978), however, solves any problems that may result from a broader reading of the word "parties" in the reallocation statute. Under *Lines,* courts submit to the jury the fault of all "parties to the transaction." Because a percentage of fault is assigned to such a party (Johns-Mansville in this case), and because the percentage assigned represents the maximum amount chargeable against such a party (the figure can be used defensively by the party in a future suit), Minnesota courts can calculate the reallocation of this assigned fault pursuant to the statute. Thus, the concerns expressed in the comment to the Uniform Act have no applicability here.

▪ In enacting the reallocation provision of section 604.02, the legislature recognized that reallocation of an uncollectible obligation should take place among all individuals at fault, including a claimant. As the drafters of the reallocation provision of the Uniform Comparative Fault Act noted:

> [The provision] avoids the unfairness both of the common law rule of joint-and-several liability, which would cast the total risk of uncollectibility upon the solvent defendants, and of a rule abolishing joint-and-several liability, which would cast the total risk of uncollectibility upon the claimant.

Uniform Comparative Fault Act, § 2, comment, 12 U.L.A. at 44 (Supp.1985). To limit the applicability of the provision to only "parties to the lawsuit," when the purpose behind such a restrictive definition is not present, would thwart the legislature's creation of a fair method of distributing the risk of uncollectible obligations under the comparative fault scheme. We therefore reverse the appellate court's holding that the reallocation provision of Minn.Stat. § 604.02, subd. 2 (1984), is inapplicable to this case.

Pittsburgh Corning argues that we should address the related issue of whether

---

(Emphasis added.) Minn.Stat. § 604.02, subd. 3 (1984), states:
> In the case of a claim arising from the manufacture, sale, use or consumption of a product, an amount uncollectible from any person in the chain of manufacture and distribution

shall be reallocated among all other *persons* in the chain of manufacture and distribution but not among the claimant or others at fault who are not in the chain of manufacture or distribution of the product.
(Emphasis added.)

Johns-Manville's share is "uncollectible" within the meaning of the statute. It urges us to hold, as a matter of law, that Johns-Manville's share is uncollectible because the judgment in the case cannot, for due process reasons, be binding on Johns-Manville and, therefore, cannot be collected.

Such a determination, however, would be premature. The reallocation provision establishes the procedure by which a trial court can determine uncollectibility. A motion must be made to the court no later than one year after judgment is entered, requesting allocation. The trial court then must find that the judgment, at that time, is uncollectible. Minn.Stat. § 604.02, subd. 2. Neither of these prerequisites was followed in this case. Thus, it would be inappropriate for us to rule on whether Johns-Manville's obligation was uncollectible. No motions for reallocation were presented; no findings by the trial court were made.

■ A related issue, however, merits our attention. In reallocating the shares among the parties, the trial court failed to consider the *Pierringer* releases executed by Hosley and the settling defendants and, as a result, stayed an incorrect portion of the judgment. In the *Pierringer* releases, Hosley agreed to satisfy that percentage of the judgment that would otherwise be reallocated to the settling defendants. The releases each contain the following clauses:

> Releasors agree to satisfy any future judgment which may be rendered in favor of Releasors, in such fraction, portion or percentage of the judgment as the causal fault of [defendant] is adjudged to be of all causal fault of all persons adjudged responsible for Releasor's damages. *It is also agreed and understood that this Release and In-demnification Agreement encompasses any and all claims based on the amount of any subsequent judgment determined to be uncollectible in accordance with Minn.Stat.Sec. 604.02 (1980), and reallocated to [defendant].*

(Emphasis added.) If the trial court had considered these clauses, it would have stayed not only $8,166.67, but also $67,666.66 (the settling defendants' share of Johns-Manville's uncollectible obligation).[3]

There appear to be no public policy considerations that would prevent us from enforcing the reallocation clause in the *Pierringer* releases. In bargaining for a settlement with some of the defendants, Hosley agreed to pay their share of any uncollectible obligations. At the time they executed the agreements, both Hosley and the other defendants were aware of the petitions for reorganization filed by two of the defendants named in the complaint, Johns-Manville and Unarco. Thus, the consequence of agreeing to such a clause in the *Pierringer* releases must have been understood by both parties. The reallocation statute establishes a fair method of distributing the risk of uncollectible obligations. This purpose, however, is not thwarted when parties agree to establish a different risk allocation scheme in a settlement agreement. The law generally favors settlement and the refusal to enforce such a clause in a settlement agreement may actually serve to disrupt the *Pierringer* principles established by this court in *Frey*.

We therefore remand for a stay of the settling defendants' share of Johns-Manville's obligation ($67,666.66), which the plaintiff agreed in the *Pierringer* releases to pay, in addition to the $8,166.67 already stayed.

---

3. In determining what the reallocated share for each of the parties would be in the event that Johns-Manville's obligation would be adjudicated uncollectible, the trial court apportioned the uncollectible amount ($87,500) among Hosley, Pittsburgh-Corning and the settling defendants. Thus, in the event that Johns-Manville's 25-percent fault is determined to be uncollectible under the statute, Hosley would be responsible for seven seventy-fifths of $87,500 (or $8,166.67); fifty-eight seventy-fifths (or $67,666.66) would be allocated to the settling defendants (although in light of the *Pierringer* releases, not collectible from them); and Pittsburgh-Corning would be required to pay ten seventy-fifths of $87,500 (or $11,666.67). This method of reallocation was appropriate.

Because we hold that the reallocation provision of section 604.02 applies to the facts of this case, we need not address the issue of any equitable rights of contribution a party may have in cases in which the reallocation statute is inapplicable.

Affirmed in part, reversed in part and remanded with instructions.

COYNE, J., took no part in the consideration or decision of this case.