Gary FREDERICKSON, Appellant,

v.

ALTON M. JOHNSON COMPANY, Respondent,

Pringle Electrical Manufacturing Company, Defendant,

Michaud, Cooley, Hallberg, Erickson & Associates, Inc., Respondent,

Dayton-Hudson Corporation, et al., Pennsylvania Corporation, et al., Federal Pacific Electric Company, Defendants.

and

MICHAUD, COOLEY, HALLBERG, ERICKSON & ASSOCIATES, INC., third party plaintiff, Appellant,

v.

HOFFMAN ELECTRIC COMPANY, Respondent,

and

Continental Insurance Company, intervenor, Respondent.

Nos. C1–85–2102, C3–85–2117.

Court of Appeals of Minnesota.

July 1, 1986.

Review Granted Sept. 22, 1986.

Howard P. Helgen, Paul D. Tierney, Douglas J. Christensen, Tierney, Norton, Krieser & Helgen, P.A., Minneapolis, Thomas J. Davern, Ardery & Davern, Golden Valley, for Frederickson.

Herbert C. Davis, St. Louis Park, for Alton M. Johnson Co.

Thomas F. Nelson, Julie A. Sweitzer, Popham, Haik, Schnobrich, Kaufman & Doty,

Ltd., Minneapolis, for Michaud, Cooley, Hallberg, Erickson & Associates, Inc.

John H. Guthmann, Hansen, Dordell, Bradt, Odlaugh & Bradt, St. Paul, for Hoffman Electric Company.

Heard, considered and decided by SEDGWICK, P.J, and PARKER and FORSBERG, JJ.

## OPINION

PARKER, Judge.

This appeal is from a judgment in a personal injury action brought by a construction worker injured in an electrical explosion against the electrical engineering firm on the project and the manufacturer of the electrical equipment. The engineers brought a third-party action seeking indemnification from the worker's employer and cross-claimed for contribution from the co-defendants, who raised a statute of limitations defense. The appeal largely involves the simple issue of proper apportionment of damages among three jointly and severally liable tortfeasors, one of whom settled by Pierringer release, one of whom is bankrupt, and one of whom is not in the chain of manufacture or distribution of the bankrupt's product. After considerable study, in which we were aided by the excellent memorandum of the trial court, we affirm.

## FACTS

On November 20, 1979, Gary Frederickson, an employee of Hoffman Electric Co., was severely burned while working on an electrical system at Rosedale Shopping Center. He was installing a fuse into an electrical cabinet manufactured by Alton Johnson Co. (Johnson) and installed by Hunt Electric Co. (Hunt). The installation of the fuse caused an electrical explosion and fire which injured Frederickson. Michaud, Cooley, Hallberg, Erickson & Associates, Inc. (MCHE), was the electrical engineering firm that designed the system on which Frederickson was working.

Frederickson commenced this action against MCHE on June 13, 1980, and amended his complaint to include Johnson on September 29, 1980. MCHE brought a third-party action against Hoffman, seeking contractual indemnification. Frederickson was permitted to amend his complaint further to include Hunt Electric on October 22, 1982. MCHE cross-claimed for contractual indemnification and contribution from Hunt on February 22, 1983. Johnson cross-claimed against Hunt for contribution on April 19, 1984.

In January 1982 MCHE served requests for admissions upon Hoffman. Hoffman served unsigned responses to these requests in June 1982. In late February 1985, three weeks from the scheduled trial date, Hoffman served MCHE with amended responses to the January 1982 requests for admissions. MCHE moved to strike the amended responses. The trial judge denied the motion and permitted the amendments, but allowed the taking of additional depositions and assessed costs and attorney's fees incurred.

In February 1984 Frederickson and Hunt entered into a Pierringer release by which Frederickson received $20,000 in return for his release of Hunt.

At trial, after submission of all the evidence, the trial court granted Hoffman's motion for a directed verdict on MCHE's contractual indemnification claim against it. The jury then apportioned 40 percent of the fault to Hunt, 40 percent to Johnson, 12 percent to MCHE and 8 percent to Frederickson. All other parties were found not negligent. The jury awarded $800,000 in damages. The trial court reduced the award by 48 percent in accordance with Frederickson's fault and his Pierringer agreement to indemnify Hunt. The court ordered judgment against Johnson and MCHE, jointly and severally, for 52 percent of the verdict ($416,000), but stayed collection of the full amount from either defendant until a determination of collectibility under Minn.Stat. § 604.02, subd. 2 (1984), was made.

The trial court denied Frederickson's, MCHE's, and Johnson's motions for a new trial. The court also determined that Johnson's 40 percent share of the judgment was uncollectible and not reallocable to MCHE. Finally, the court ruled that MCHE was not entitled to contractual indemnity from Hunt.

Frederickson, MCHE, and Johnson all filed separate appeals, which were consolidated by order of this court. Johnson then voluntarily dismissed its appeal. At oral argument before this court, Johnson moved to dismiss Frederickson's appeal because it was not served with any briefs.[1]

### ISSUES

1. Should Frederickson's appeal be dismissed for failure to serve Johnson with his brief?

2. Did the trial court abuse its discretion by permitting Hoffman to amend its admissions?

3. Did the trial court err by reducing the verdict in the amount of Hunt's 40 percent share?

4. Did the trial court err in refusing to reallocate Johnson's uncollectible 40 percent share of the judgment to MCHE?

5. Did the trial court err in determining that MCHE had no contractual indemnification claim against Hunt?

6. Did the trial court err in directing a verdict in favor of Hoffman Electric on MCHE's contractual indemnification claim against Hoffman?

### DISCUSSION

#### I

■ Minn.R.Civ.App.P. 131.03, subd. 2, requires a party to serve two copies of its brief on the attorney for each party to the appeal separately represented. Since Frederickson is seeking relief that potentially affects Johnson's share of the judgment, Johnson clearly was a respondent to Fred-

1. This motion should, of course, have been made pursuant to Minn.R.Civ.App.P. 127 and not at oral argument without notice to any party

erickson's appeal and should have been served.

■ Motions to dismiss an appeal are governed by Minn.R.Civ.App.P. 142.02, which provides in pertinent part:

The respondent may serve and file a motion for * * * dismissal if the appellant fails * * * to serve *and file* his brief * * * as required by these rules.

*Id.* (emphasis added). Frederickson timely filed his brief with this court. Furthermore, Johnson did not request additional time in which to file a brief, nor did it indicate that it desired to do so. Our disposition of the case does not grant any additional relief against Johnson, and there are no circumstances present that would make the imposition of a penalty on Frederickson appropriate. We therefore deny the motion to dismiss.

#### II

■ Minn.R.Civ.P. 36.02 provides that the trial court "may permit" withdrawal or amendment of an admission

when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits.

*Id.* The prejudice contemplated by rule 36.02 concerns the difficulty a party may face in proving its case because of the unexpected and sudden need to obtain evidence required to prove the matter that had been previously admitted. *Gutting v. Falstaff Brewing Corp.,* 710 F.2d 1309, 1314 (8th Cir.1983) (construing Fed.R.Civ.P. 36(b)). The decision whether to permit the amendment under the circumstances rests within the trial court's discretion. *See Dahle v. Aetna Casualty and Surety Insurance Co.,* 352 N.W.2d 397, 402 (Minn. 1984).

or the court. None of the parties objected to the motion or the lack of notice, however.

Here, a few weeks before trial, Hoffman moved for permission to make substantial amendments to its previous admissions concerning MCHE's indemnification claim against Hoffman. While the amendments were apparently the result of a good-faith mistake, this was still poor practice. MCHE, however, did not demonstrate that permitting the amendments would make it impossible or extremely difficult to prove its claim; instead MCHE simply told the trial court that the amendments would necessitate additional depositions. The trial court allowed further depositions along with costs and attorney's fees incurred in taking them. Without any demonstrable prejudice to MCHE's ability to prove its claim as a result of the amendment, we cannot say the trial court abused its discretion in permitting the amendments.

### III

Frederickson claims that MCHE's and Johnson's claims for contribution and contractual indemnity against Hunt were barred by the applicable statute of limitations and thus there existed no contribution or indemnification liability for which Frederickson had agreed to indemnify Hunt under the Pierringer. As a result, Frederickson argues that the trial court erred in reducing the verdict by Hunt's 40 percent share in accordance with the Pierringer because the non-settling defendants are jointly and severally liable for the entire award less plaintiff's contributory fault.

■ The parties agree that the statute of limitations for damages based on services or construction to improve real property, Minn.Stat. § 541.051 (1984), is applicable. In *Bulau v. Hector Plumbing and Heating Co.*, 387 N.W.2d 659 (Minn.Ct.App. 1986), this court held that the two-year period in which an action for contribution or indemnity must be brought under § 541.051 commences when a defendant is sued by the plaintiff. Frederickson served his complaint on MCHE on June 13, 1980. MCHE did not assert its claims for contribution or contractual indemnity against Hunt until February 22, 1983. Under *Bu-*

*lau*, MCHE's claims are barred by § 541.-051.

■ However, we think the verdict should still be reduced by Hunt's 40 percent share because of the Pierringer release. Two of the basic elements of a Pierringer release are (1) the discharge of a part of plaintiff's cause of action equal to that part attributable to the settling defendant's causal negligence and (2) plaintiff's agreement to satisfy any judgment obtained from the nonsettling defendants to the extent the settling defendant has been released. *Frey v. Snelgrove*, 269 N.W.2d 918, 920 n. 1 (Minn.1978). Frederickson's Pierringer release states in part:

[B]y this covenant Gary N. Frederickson settles and satisfies that percentage of Gary N. Frederickson's total claim for damages against all parties arising out of the accident of November 20, 1979, which shall hereafter * * * be determined to be the percentage of causal fault * * * for which Hunt Electric Corporation is found to be liable.

Thus, the simple answer to Frederickson's argument is that he agreed to satisfy, against all parties, Hunt's share of the judgment. At the time Frederickson signed the Pierringer, the trial court had already ruled that MCHE's and Johnson's contribution and indemnity claims were not barred by the statute of limitations. If Frederickson was convinced that MCHE's and Johnson's cross-claims were time-barred, as *Bulau* subsequently held, then he and Hunt should simply have entered into a covenant not to sue, not a Pierringer release. However, by signing a Pierringer, Frederickson specifically agreed to satisfy Hunt's share of the judgment, and he will be held to his agreement.

### IV

■ Minn.Stat. § 604.02, subd. 2 (1984), provides:

Upon motion made not later than one year after judgment is entered, the court shall determine whether all or part of a party's equitable share of the obligation is uncollectible from that party and shall

reallocate any uncollectible amount among the other parties, including a claimant at fault, according to their respective percentages of fault.

*Id.* The trial court found that Johnson's share of the judgment was uncollectible, and no party has appealed that finding. Normally, upon a finding of uncollectibility the trial court must reallocate the uncollectible share "among all individuals at fault, including a claimant." *Hosley v. Armstrong Cork Co.,* 383 N.W.2d 289, 293 (Minn.1986).

However, Minn.Stat. § 604.02, subd. 3, states:

> In the case of a claim arising from the manufacture, sale, use or consumption of a product, an amount uncollectible from any person in the chain of manufacture and distribution shall be reallocated among all other persons in the chain of manufacture and distribution *but not among the claimant or others at fault who are not in the chain of manufacture or distribution of the product.*

*Id.* (emphasis added). The trial court concluded that Frederickson's claim against Johnson arose from the manufacture and sale of the defective electrical cabinet (products liability). The trial court then ruled that because Frederickson's claim against MCHE was *not* a products liability claim (but based on a claim of defective services) and because MCHE was not "in the chain of manufacture and distribution" of the defective cabinet, Johnson's uncollectible share could not be reallocated to them.

We think the trial court's construction of § 604.02, subd. 3, is correct. It is clear that § 604.02, subd. 2, modifies the rule of joint and several liability upon a finding of uncollectibility, since claimants must also share in the burden of a defendant's uncol-

lectible share of the judgment. *See Hosley,* 383 N.W.2d at 293 (citing Uniform Comparative Fault Act, § 2, comment, 12 U.L.A. at 44 (Supp.1985)). Similarly, by prohibiting reallocation of an uncollectible share to particular defendants, § 604.02, subd. 3, further modifies the joint and several liability rule, and this may result in the plaintiff not being able to recover his full judgment. We agree that MCHE, which designed the electrical system, was not in the chain of manufacture or distribution of the electrical cabinet and therefore is not subject to reallocation of Johnson's uncollectible share.[2]

## V

The final two issues raised on appeal require the recitation of some additional facts. Rosedale Shopping Center was apparently constructed in three stages, described in the record as Stage I, Stage II, and Stage III. The third stage eventually required revision, and that work was described as the Stage III Revision.

Hunt was the electrical contractor in Stage II. MCHE performed all the electrical engineering during every stage. Hunt's contract[3] with Dayton Hudson Corp., the owner of the Rosedale development, included an indemnification clause which provided:

> The Contractor [Hunt] shall indemnify * * * the Owner and the Architect * * * against all * * * damages * * * arising out of or resulting from the performance of the Work, provided that any such * * damage * * * (1) is attributable to bodily injury * * *, and (2) is caused in whole or in part by any negligent act * * * of the Contractor [Hunt] * * * regardless of whether or not it is caused in part by a party indemnified hereunder.

---

**2.** We express no opinion as to whether Johnson's uncollectible share can be reallocated to Hunt or whether Frederickson, through his Pierringer release, agreed to pay Hunt's share of any uncollectible obligation reallocated to Hunt. *See Hosley,* 383 N.W.2d at 294. These arguments were not raised below.

**3.** The contract form used was the American Institute of Architects (AIA) General Conditions, 1970 edition. The record does not appear to contain a copy of the complete Stage II contract documents, and we rely on counsel for MCHE's representations that these provisions were contained in the original contract.

A supplementary condition provided that the term "architect" was to include the engineer, MCHE. Pursuant to this indemnification provision, MCHE seeks indemnification from Hunt for MCHE's own negligence. Because Frederickson, through his Pierringer, agreed to satisfy any indemnification claims against Hunt, he would have to reduce the verdict by MCHE's share if MCHE possessed a valid claim for indemnification from Hunt.

We note initially that MCHE's claim for indemnity is barred by § 541.051 under *Bulau*, 387 N.W.2d 659. However, we shall also address the merits of the claim, since that was the basis of the decision below.

Indemnity agreements are to be strictly construed when the indemnitee seeks to be indemnified for its own negligence. *Farmington Plumbing & Heating Co. v. Fischer Sand and Aggregate, Inc.*, 281 N.W.2d 838, 842 (Minn.1979). Whether an indemnity agreement also applies to injuries that occur after the completion of a contractor's work depends upon the language of the contract containing the indemnity provision and the logical expectations of the parties in entering into the agreement. *R.E.M. IV, Inc. v. Robert F. Ackermann & Associates, Inc.*, 313 N.W.2d 431, 433–34 (Minn. 1981).

While the indemnity provision involved here clearly states that the negligent contractor must indemnify the architect for the architect's contributing negligence, nothing in the actual language of the provision speaks of Hunt's duty to indemnify MCHE after Hunt's work was completed.

Additional contract provisions did require Hunt to maintain "completed operations" insurance for two years after MCHE's acceptance of its work. To the extent this suggests an intention to require indemnity after the completion of Hunt's work, it suggests only an intention to provide indemnification for two years after the work. *See R.E.M. IV*, 313 N.W.2d at 435 (explaining "completed operations" coverage). It appears from the record, however, that Frederickson's injury occurred more than two years after Hunt completed its work.

The contract also provided for a "contractual liability" endorsement that required Hunt to maintain insurance to cover the indemnity agreement. However, there is no indication how long this insurance was required to be maintained, if at all, after Hunt completed its work.

Finally, the logical expectation of the parties does not strongly support MCHE's indemnification claim. Hunt's negligence occurred during Stage II, and Hunt was not involved at all in Stage III; MCHE's negligence occurred during the Stage III Revision. There is no evidence that the Stage III Revision was contemplated at the time Hunt entered into the Stage II agreement, or that MCHE would be involved in the future Revision. While Hunt may have expected to indemnify MCHE for MCHE's contributing negligence arising from work performed anytime during Stage II, we cannot conclude that Hunt logically expected that the contract required it to indemnify MCHE for MCHE's negligent conduct in a future construction project in which Hunt was not even involved.

## VI

 Finally, MCHE raises a similar indemnification claim against Hoffman. Hoffman was involved in both Stage III and the Stage III Revision projects. The contract documents for Stage III indicate that Hoffman was a subcontractor on that project and that a company called Witcher Construction was the general contractor. Hoffman's subcontractor agreement with Witcher contained an indemnification clause whereby Hoffman agreed to indemnify Witcher for damages caused by Hoffman's work.

After Hoffman completed its work under its Stage III subcontract, Dayton Hudson discovered that additional electrical work would be required on the project. Dayton Hudson issued a purchase order to MCHE requesting engineering plans to enlarge the electrical capacity of the development. MCHE recommended that Hoffman be retained as the electrical contractor, and Day-

ton Hudson issued a purchase order to Hoffman for the electrical work.

The purchase order denominated Hoffman as "the Contractor" and stated that Hoffman would provide work and materials "in accordance with the project specifications and drawings dated _____ for the above named project, on these Conditions stated here and on the reverse side hereof." The order required Hoffman to run a new electrical feeder "per MCHE's plans" and contained the following indemnification clause:

> The Contractor shall furnish all labor, materials, * * * and hold Dayton Hudson Corporation, RDCD, its agents and employees, harmless against * * * all claims or liability for damages to person or property whatsoever by reason of the work hereunder, in accordance with the specifications.

MCHE ultimately prepared a drawing for the Stage III Revision. MCHE placed the following language on the drawing:

> This drawing is a revision to the original Stage III contract documents. Plans & specifications to the original contract shall hold true for this Revision.

MCHE argues that the references to "specifications" in Dayton Hudson's purchase order to Hoffman and in MCHE's drawing incorporated the original Stage III contractual provisions into the Stage III Revision agreement and that Hoffman's work under the Revision was thus governed by the Stage III contract documents. Specifically, MCHE claims that Hoffman's work was governed by the indemnification clause found in the Stage III contract document. This clause was identical to the one previously discussed in Part V of this opinion and provides that "the Contractor" must indemnify MCHE for MCHE's contributory negligence. MCHE therefore argues that the indemnification clause found in the purchase order to Hoffman is inapplicable.

The trial court concluded that the term "specifications" referred only to the work to be done under the purchase order, not the entire Stage III project specifications,

and that the notation on MCHE's drawing was not agreed to by Dayton Hudson. The trial court also placed substantial weight on a letter from one of Dayton Hudson's officers which stated that "[t]he back side of the Purchase Order provides the conditions under which [the Stage III Revision] work was to be accomplished." We agree with the trial court that the testimony was clear that Dayton Hudson did not approve the notation which MCHE placed on the drawing and that the provisions of the Stage III contract could not, therefore, have been incorporated through that document.

 Even had the purchase order successfully incorporated the specifications and contractual obligations of the Stage III project, it does not follow that Hoffman became subject to the indemnification clause found in the General Conditions of the Stage III construction contract. The General Conditions of the Stage III contract define "the Contractor" as "the person or organization identified as such in the Agreement." *See* Article 4.1, AIA General Conditions, 1970 edition. The "Agreement," which is another AIA standard form entitled "Agreement Between Owner and Contractor," lists Witcher Construction Co. as the "contractor" for the Stage III project. Therefore, even if the Stage III contract documents were incorporated into the Revision agreement, those documents provide that only Witcher was bound by the indemnification clause which indemnifies MCHE for its own negligence. We cannot see how Hoffman can replace Witcher as the "Contractor" in the Stage III contract documents even if the documents were incorporated by reference.

Furthermore, we have not been cited to any testimony indicating that Hoffman ever thought or stated that the General Conditions of the AIA standard contract applied to the Revision work, and there was strong evidence that Dayton Hudson did not think the work was governed by the AIA General Conditions. The fact that MCHE apparently thought that the AIA General Conditions governed the Revision

work is of little consequence, inasmuch as MCHE was not a party to the purchase order contract between Dayton Hudson and Hoffman. That purchase order contract already contained an indemnification clause, one which did not clearly provide for indemnification based upon the indemnitee's negligence. The trial court was correct in ruling that, based on the evidence, reasonable minds could not have concluded the applicable indemnification clause was actually found in the Stage III contract documents.

## DECISION

The judgment is affirmed in all respects.

Affirmed.