Gary FREDERICKSON,
Petitioner, Appellant,

v.

ALTON M. JOHNSON CO., Respondent,

Pringle Electrical Manufacturing
Co., Defendant,

Pennsylvania Corp., et al., Defendants,

Michaud, Cooley, Hallberg, Erickson &
Associates, Inc., Petitioner, Appellant.

and

MICHAUD, COOLEY, HALLBERG, ER-
ICKSON & ASSOCIATES, INC., Third
Party Plaintiff, Petitioner, Appellant,

v.

HOFFMAN ELECTRIC CO., Third
Party Defendant, Respondent,

Continental Insurance Co.,
Intervenor, Respondent.

Nos. C1–85–2102, C3–85–2117.

Supreme Court of Minnesota.

March 20, 1987.

Rehearing Denied April 15, 1987.

Howard P. Helgen, Douglas J. Christensen, Paul D. Tierney, Minneapolis, Thomas J. Davern, Golden Valley, for Gary Frederickson.

Thomas F. Nelson, Minneapolis, for Michaud, Cooley, et al.

John H. Guthmann, St. Paul, for Hoffman Elec. Co.

Herbert Davis, Minneapolis for Alton M. Johnson. Jon L. Levy Sr., Minnetonka, for Continental Ins. Co.

SCOTT, Justice.

These appeals arise out of a personal injury action. The principal issues are whether a jury verdict should be reduced by the percentage of fault attributable to a defendant settling by a *Pierringer* agreement when any contribution claims by the nonsettling defendants would be barred by the statute of limitations, and whether the uncollectible portion of the judgment should be reallocated pursuant to Minn. Stat. § 604.02 (1984). We hold that the jury verdict was properly reduced and that the uncollectible portion should be reallocated. Therefore, we affirm in part and reverse in part.

On November 20, 1979, Gary Frederickson ("Frederickson") was injured by an electrical explosion at Rosedale Shopping Center. Frederickson, an electrician employed by Hoffman Electric Co. ("Hoffman"), was working on an electrical switchboard manufactured by the Alton M. Johnson Company ("Johnson") when the explosion occurred. Frederickson commenced an action on June 12, 1980, against

Michaud, Cooley, Hallberg, Erickson & Associates, Inc. ("Michaud-Cooley"), the project's electrical engineers, alleging negligent design of the shopping center's electrical system, and against other defendants, alleging negligence and products liability. Michaud-Cooley then brought a third-party action against Hoffman for contractual indemnification.

On October 22, 1982, Frederickson amended his complaint to add an earlier electrical contractor, Hunt Electric Co. ("Hunt"), which had installed the switchboard and, on February 22, 1983, Michaud-Cooley crossclaimed against Hunt, seeking contribution and contractual indemnification. Prior to trial, Frederickson and Hunt entered into a *Pierringer* agreement, and Hunt was dismissed from the case. Frederickson received $20,000 in return for releasing Hunt. Their agreement stated in part:

> [B]y this covenant Gary N. Frederickson settles and satisfies that percentage of Gary N. Frederickson's total claim for damages against all parties arising out of the accident of November 20, 1979, which shall hereafter * * * be determined to be the percentage of causal fault * * * for which Hunt Electric Corporation is found to be liable.

Before submitting the case to the jury, the trial court granted Hoffman's motion for a directed verdict against Michaud-Cooley on its third-party indemnification claim. The jury then found that Frederickson had sustained damages of $800,000 and allocated 40% of the fault to Johnson; 40% to Hunt; 12% to Michaud-Cooley; and 8% to Frederickson.

The district court reduced the verdict by the 40% fault attributed to Hunt and the 8% fault attributed to Frederickson, and ordered that judgment in the amount of $416,000 be entered jointly and severally against Michaud-Cooley and Johnson. The court ordered that $320,000 of that judgment against Michaud-Cooley be stayed until a court determination of collectibility from Johnson was made.

The trial court determined that Johnson's portion of the verdict was "uncollectible," and granted Michaud-Cooley's motion that Johnson's uncollectible share not be reallocated to it pursuant to Minn.Stat. § 604.02. Michaud-Cooley also moved for indemnification from Hoffman and for a new trial, but these motions were denied. Frederickson also moved to vacate the pretrial ruling that Minn.Stat. § 541.051 did not bar claims against Hunt, to amend the judgment, and for a new trial, but these motions also were denied.

Frederickson, Michaud-Cooley, and Johnson all appealed, and their appeals were consolidated. Johnson later voluntarily dismissed its appeal. The court of appeals affirmed the trial court. *Frederickson v. Alton M. Johnson Co.*, 390 N.W.2d 786 (Minn.Ct.App.1986).

The following issues are presented:

(1) Does the two-year statute of limitations in Minn.Stat. § 541.051 bar Michaud-Cooley's contribution and indemnification claims against Hunt?

(2) Is it proper to reduce the jury verdict by the 40% fault attributable to Hunt?

(3) Under Minn.Stat. § 604.02, is Michaud-Cooley liable for the uncollectible portion of the judgment?

(4) Is Michaud-Cooley entitled to contractual indemnification from Hoffman?

1. Michaud-Cooley's contribution and indemnification claims against Hunt are barred by Minn.Stat. § 541.051 (1984). The court of appeals held that the two-year statute of limitations of Minn.Stat. § 541.-051, subd. 1, barred Michaud-Cooley's crossclaims for contribution and indemnification against Hunt. *Frederickson v. Alton M. Johnson Co.*, 390 N.W.2d·786, 791 (Minn.Ct.App.1986). We agree that the claims against Hunt are barred by Minn. Stat. § 541.051, subd. 1, although our interpretation of the statute differs from that of the court of appeals. This court held in *Bulau v. Hector Plumbing & Heating*, 402 N.W.2d 528 (Minn.1987), that the statute of limitations for contribution actions runs from the discovery of the defective and

unsafe condition. The same rationale applies to the indemnity claim because the statute applies to "any action for contribution *or indemnity*" arising out of the defective and unsafe condition of an improvement to real property. *See* Minn.Stat. § 541.051, subd. 1 (emphasis added).

■ 2. Reduction of the jury verdict by the 40% of fault attributable to Hunt is proper. Although Michaud-Cooley's cross-claim against Hunt is barred by the statute of limitations, Minn.Stat. § 541.051, the reduction of the jury verdict by the 40% of fault attributable to Hunt is proper. A *Pierringer* agreement does more than provide for indemnity or contribution; it also releases the settling defendant and a part of plaintiff's cause of action, and reserves the balance of the plaintiff's cause of action against the nonsettling defendants. *See Frey v. Snelgrove*, 269 N.W.2d 918, 920 n. 1 (Minn.1978); *Pierringer v. Hoger*, 21 Wis.2d 182, 184–85, 124 N.W.2d 106, 108 (1963); Simonett, *Release of Joint Tortfeasors: Use of the* Pierringer *Release in Minnesota*, 3 Wm. Mitchell L.Rev. 1, 8 (1977). Justice Simonett has pointed out that the indemnification provisions are "'second-line protection' for the releasees in the event that the provisions discharging the releasees and their share of the cause of action were found later to be ineffective." *Id.* at 20 (footnote omitted); *see Pierringer*, 21 Wis.2d at 185, 124 N.W.2d at 108.

The release portion of the agreement between Frederickson and Hunt provided that:

> [B]y this covenant Gary N. Frederickson settles and satisfies that percentage of Gary N. Frederickson's total claim for damages against all parties arising out of the accident of November 20, 1979, which shall hereafter by further trial or other disposition of this or any other action be determined to be the percentage of causal fault or causal responsibility whether for negligence, or any other liability for which Hunt Electric Corporation is found to be liable.

The court of appeals found that this satisfaction of a portion of the cause of action made the 40% reduction proper. *See Frederickson*, 390 N.W.2d at 791. We agree. This follows from this court's decision in *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn. 1978), in which we noted that when there is a *Pierringer* agreement, "'plaintiff is limited in recovery to the unsatisfied percentage of the damages—the percentage attributable to the nonsettling tort-feasor.'" *Id.* at 922 (quoting *Peiffer v. Allstate Ins. Co.*, 51 Wis.2d 329, 335, 187 N.W.2d 182, 185 (1971)).

■ 3. Johnson's uncollectible portion of the judgment should be reallocated to Michaud-Cooley, Hunt, and Frederickson pursuant to Minn.Stat. § 604.02, subd. 2 (1984). This court held in *Hosley v. Armstrong Cork Co.*, 383 N.W.2d 289, 292 (Minn.1986), that a *Pierringer* agreement "does not waive joint liability between all defendants." *Id.* Section 604.02, subd. 1, sets out the general rule: "When two or more persons are jointly liable, contributions to awards shall be in proportion to the percentage of fault attributable to each, except that each is jointly and severally liable for the whole award." Minn.Stat. § 604.02, subd. 1 (1984). This statute clearly states that Minnesota's comparative fault scheme does not abolish joint and several liability. *See Hosley*, 383 N.W.2d at 292. Michaud-Cooley and Johnson, the nonsettling defendants, are, therefore, jointly and severally liable for 52% of Frederickson's damages.

Although Michaud-Cooley is jointly and severally liable for this amount, it may seek to have Johnson's share, which the trial court found uncollectible, reallocated among the parties pursuant to Minn.Stat. § 604.02, subd. 2. This subdivision provides:

> Subd. 2. Upon motion made not later than one year after judgment is entered, the court shall determine whether all or part of a party's equitable share of the obligation is uncollectible from that party and *shall reallocate any uncollectible amount among the other parties*, including a claimant at fault, according to

their respective percentages of fault. A party whose liability is reallocated is nonetheless subject to contribution and to any continuing liability to the claimant on the judgment.

Minn.Stat. § 604.02, subd. 2 (emphasis added).

The trial court determined that Johnson's share of Frederickson's judgment was "uncollectible" under this statute and that this share was not reallocable to Michaud-Cooley. The court of appeals agreed that Johnson's fault should not be allocated to Michaud-Cooley, but expressed no opinion as to whether this share should be reallocated to Hunt or whether Frederickson, through his *Pierringer* release, agreed to pay any amount reallocated to Hunt, claiming that these arguments were not raised below. *Frederickson*, 390 N.W.2d at 792 & n. 2.

That court implied, if it did not hold, that Michaud-Cooley was not liable for Johnson's share because Minn.Stat. § 604.-02, subds. 2 and 3, modified the rule of joint and several liability, and held that Johnson's fault could not be reallocated to Michaud-Cooley. This court, however, has held that joint and several liability applies. *See Hosley v. Armstrong Cork Co.*, 383 N.W.2d 289, 292 (Minn.1986).

Reallocation of the 40% fault attributable to Johnson, therefore, must be made pursuant to Minn.Stat. § 604.02, subd. 2. This results in Hunt's fault being increased to 66⅔%; Frederickson's fault being increased to 13⅓%; and Michaud-Cooley's fault being increased to 20%. Because Frederickson released his cause of action to the extent Hunt was liable—here 66⅔% of his damages—he may recover only against Michaud-Cooley and only 20% of his total damages, or $160,000. The court of appeals is reversed to the extent its decision is inconsistent with this opinion.

■ 4. Michaud-Cooley is not entitled to contractual indemnification from Hoffman. The trial court granted Hoffman's motion for a directed verdict on this claim and the court of appeals agreed.

Michaud-Cooley's claim against Hoffman depends on the contract governing Hoffman's work on the Rosedale Stage III Revision. Rosedale Shopping Center was built in three stages and one revision. Michaud-Cooley was the electrical engineer throughout the construction. Hunt was the electrical contractor for Stage II only, and Hoffman was the electrical subcontractor on Stage III. As a subcontractor on Stage III, Hoffman agreed to indemnify Witcher Construction Company ("Witcher"), the general contractor, for injury to persons and property arising out of the subcontract when "the cause of the damage or injury was or is an event or act within the control of the subcontractor." This last clause was specially negotiated and typewritten on the printed form.

Michaud-Cooley now claims that through the purchase order that Dayton-Hudson, Rosedale's owner, issued to Hoffman for the Stage III Revision, Hoffman became the "contractor" and subject to the indemnification provisions of Article 4.18.1 of the General Conditions applicable to Stage III. This purchase order, however, had its own indemnification clause which provided that the contractor should "hold Dayton Hudson Corporation, RDCD, its agents and employees, harmless against all penalties for violation of governing ordinances and all claims or liability for damages to person or property whatsoever by reason of the work hereunder, in accordance with the specifications." The purchase order was to be "in accordance with the project specifications and drawings dated _____ for the above named project, on these Conditions stated here and on the reverse side hereof." Michaud-Cooley's plans, drawing AE–1, dated 10–22–79, included the note that "this drawing is a revision to the original stage III contract documents. Plans & specifications to the original contract shall hold true for this revision. Original No. 03195."

The trial court apparently held that this language did not incorporate the entire volume of Stage III specifications into the purchase order contract. The court of appeals agreed that the purchase order did

not incorporate the indemnity provisions of the Stage III contract. *Frederickson*, 390 N.W.2d at 794. We agree. Further, as the court of appeals suggests, "those documents provide that only Witcher was bound by the indemnification clause which indemnifies [Michaud-Cooley] for its own negligence. We cannot see how Hoffman can replace Witcher as the 'Contractor' in the Stage III contract documents even if the documents were incorporated by reference." *Id.*

■ The strict construction test this court applies when a party seeks indemnity for its own negligence, *see Farmington Plumbing & Heating Co. v. Fischer Sand & Aggregate, Inc.*, 281 N.W.2d 838, 842 (Minn.1979), also supports our conclusion that Hoffman is not bound to indemnify Michaud-Cooley because Article 4.18.1 only requires "the contractor" to indemnify it and that agreement made Witcher the contractor. An obligation to indemnify for another's own negligence will not be found by implication. *Farmington*, 281 N.W.2d at 842.

We hold that Michaud-Cooley's cross-claims against Hunt are barred by the two-year statute of limitations, Minn.Stat. § 541.051, subd. 1 (1984); that the trial court properly reduced Frederickson's judgment by the 40% fault attributable to Hunt because Frederickson's claim was satisfied to that extent by his *Pierringer* agreement; that Johnson's uncollectible share should be reallocated to Hunt, Frederickson, and Michaud-Cooley pursuant to Minn.Stat. § 604.02, subd. 2 (1984); and that Michaud-Cooley is not entitled to contractual indemnification from Hoffman.

Affirmed in part and reversed in part.