Cass County, Appellee, v. Audubon County, Appellant.

No. 43175.

April 7, 1936.

Rehearing Denied October 2, 1936.

Graham & Graham, for appellant.

Earl S. Holton and Swan, Martin & Martin, for appellee.

Richards, J.—This case was instituted as an action in equity, in the Audubon county district court. Plaintiff Cass county, now appellee, alleged it had expended $612.87 for relief of Matt Voggesser and family, poor persons, during the period from June to October, 1933, while said poor persons are alleged to have had their legal settlement in Audubon county, the appellant. The petition prayed judgment against appellant for said

sum and for order and decree that Voggesser and family be immediately transported back to Audubon county, and that Audubon county be compelled to receive them as their poor, and that plaintiff be accorded general equitable relief. By amendment filed shortly before the end of the trial of the case, appellee increased the amount of its claim to $662.24 and added to its prayer that it be adjudged that the legal settlement of said Voggesser and family is in Audubon county.

Appellant moved that the cause be transferred to the law docket and that plaintiff be required to replead in accord with the rules of law procedure and that said cause be tried at law. This motion was sustained. Upon appellee's motion the court then changed the place of trial to the Shelby county district court, where later the case was tried as a law action; a jury being waived. At the close of the evidence plaintiff dismissed entirely, but without prejudice, its demand for a money judgment against defendant. Thereafter defendant moved to strike from the above-mentioned amendment to petition that portion of the prayer asking that it be adjudged that the legal settlement of Voggesser and family is in Audubon county. This motion was overruled, and the court entered a decree that the legal settlement of Voggesser and family is in Audubon county, and that Voggesser and family be and are ordered removed from Cass into Audubon county at the expense of Cass county. This decree was rendered as equitable relief, the court holding that the transfer of the case to law did not deprive plaintiff of any of the relief asked in its original petition in equity. From this decree and other adverse rulings defendant has appealed.

We pass alleged procedural errors argued by appellant, and direct attention to what we deem the pivotal and ultimate question; that is, whether Voggesser, living at Marne in Cass county continuously from June 14, 1931, up to the time of the trial of the case, as we will describe, had acquired a legal settlement in Cass county when the relief was furnished in 1933, and before Cass county served him with the first notice to depart, which was served in August, 1933. Appellee claims Voggesser had not acquired such legal settlement in Cass county when the assistance was rendered and when the notice to depart was served, because of the condition on which a suspension of sentence and parole had been granted to Voggesser as hereinafter set out. On the other hand, appellant denies that the terms of the suspension of

sentence and parole are in any way material, and claims that because a notice to depart was not served on Voggesser by Cass county within one year after he with his family began living at Marne in appellee county in June, 1931, a legal settlement was acquired by Voggesser in appellee county in June, 1932, and appellant county is not liable for expense of assistance rendered by appellee in 1933.

Upon this issue the evidence is practically without conflict. For many years prior to June 25, 1926, Voggesser and his family had been residents of Cass county, he being a capable stone and brick mason. On the date last mentioned, Voggesser removed with his family to Audubon county, and he still had his legal settlement in that county in June, 1931, on the 13th day of which month, in the Audubon county district court, Voggesser entered a plea of guilty to the charge of carrying concealed weapons. On the same day he was sentenced to serve a term of two years in the penitentiary. As a part of the pronouncement of judgment the court ordered that the sentence be suspended, and that Voggesser be paroled to Sam Rudolph during good behavior, upon condition, among others, that Voggesser should not remain in or enter Audubon county, without the express permission of the sheriff and county attorney. Voggesser was never imprisoned under the sentence mentioned. On the day following the judgment, that is on June 14, 1931, Voggesser and his family removed from Audubon county to the town of Marne in Cass county, where Voggesser rented a dwelling place and with his family continued to live in the manner of any other resident, for a period of over two years, then removing to Atlantic in Cass county, where he procured a dwelling house and continued to reside with his family up to the time of the trial of this case in the fall of 1934. During the period of more than two years after Voggesser moved to Marne, he had employment practically all of the time. The extent of his employment after moving to Atlantic is not shown. It is not claimed that Voggesser ever sought permission to return to Audubon county, nor is there any evidence that the sheriff or county attorney would have refused him if he had desired to return. There is no evidence of any acts, circumstances, or statements on the part of Voggesser indicating any intention to return to Audubon county as a place to dwell; the only showing in the latter respect being that soon after coming to Marne he made a statement that he

had a claim against an insurance company for a chicken coop that burned, and that he was going back to "scrap out" this claim and to "scrap out" whether he could recover title to real estate he had lost. But the insurance claim was settled shortly after he moved to Marne, and there is no evidence that Voggesser ever returned to Audubon county for any purpose, or ever contemplated so doing.

Chapter 267, Code 1931 (section 5297 et seq.), has to do with support of the poor. The sections about to be mentioned are portions of that chapter. Section 5311 is in part as follows:

"5311. Settlement—how acquired. * * * 1. Any adult person residing in this state one year without being warned to depart as provided in this chapter acquires a settlement in the county of his residence."

Section 5312 provides that a legal settlement once acquired continues until lost by acquiring a new one. The provisions with reference to a warning to depart mentioned in section 5311 are found in section 5315, the material part of which is that persons going from one county to another, who are county charges or are likely to become such, may be prevented from acquiring a settlement by the authorities of the county in which such persons are found, warning them to depart therefrom, and after such warning such persons cannot acquire a settlement except by the requisite residence of one year without further warning. The statutory duty of each county is to assist the poor persons having settlements in that county. Section 5319 provides that the county where the poor person has his settlement shall be liable to any other county, rendering relief, for all reasonable charges and expenses incurred in the relief and care of such poor person, and for the charges of removal and expenses of support incurred after notice is given. It was to recover upon this statutory liability that this action was originally commenced, and pertaining to which the court entered its equity decree.

It will be seen, from the record as above outlined, that unless overturned by appellee's contention, the evidence established beyond any argument that Voggesser and his family acquired a legal settlement in Cass county prior to the year 1933, during which year the assistance was rendered and service was made of the notice to depart. To overturn and nullify the proposition

that Voggesser had acquired such legal settlement in Cass county, appellee advances a theory and argument which is based on certain conclusions appellee draws from the fact that the district court of Audubon county, in June, 1931, in suspending sentence and paroling Voggesser, imposed the condition already noted with reference to Voggesser not remaining in or entering Audubon county without permission. Appellee states its contention as follows:

"The Court was correct in holding that the legal settlement of Matt Voggesser and family was and remained in Audubon County, Iowa, for the reason that said Voggesser left Audubon County under compulsion and not of his own free will, and the legal warning to depart was served upon him promptly by the Board of Supervisors of Cass County, as soon as the freedom of action of the said Voggesser was restored."

The "freedom of action," mentioned in the foregoing, is a reference to the fact that on May 13, 1933, the Audubon district court entered an order that Voggesser be discharged from the parole and that the sentence be terminated.

The district court sustained appellee's contention and bottomed its decree thereon. It will aid to quote the following from the language of the decree:

"For him (Voggesser) to have acquired a legal settlement in Cass County he must have been at liberty to decide whether he would remove from Audubon County, and leaving under the circumstances he did, he has never acquired a legal settlement in Cass County, and the legal settlement of himself and family is still in Audubon County, Iowa."

Under the fact situation in this case, two things would concur in the acquiring of a settlement in a given county by the poor person: First, personal presence in a fixed and permanent abode, or permanency of occupation as distinct from lodging, boarding, or temporary occupation; and, second, an intention to there remain, without any present intention of removing therefrom. Cerro Gordo County v. County of Wright, 50 Iowa 439; Hinds v. Hinds, 1 Iowa 36. As to the first element, as we have said above, the evidence establishes that Voggesser was dwelling in Cass county in all physical respects as would any other established resident of that county. Surely, from these

physical facts, the condition of the parole can detract nothing. Obviously then it is only to the other element, concurring in the acquisition of a settlement, the *animus manendi*, that appellee's argument, based on alleged compulsion, could have relevancy.

Pertinent to the period of about two years prior to the order of discharge from parole made on May 13, 1933, appellee's argument seems to be this: That Voggesser did not abandon his legal settlement in Audubon county; that the warrant for saying he did not, is the fact he could not do so; that the reason he could not do so is the fact that he left Audubon county under compulsion and not of his own free will; that because he could not and therefore did not abandon his Audubon county settlement, he therefore could not exercise his will or any intent to dwell as a resident of Cass county; therefore, says appellee, Voggesser acquired no legal settlement in Cass county.

Two obstacles prevent following appellee to its conclusion. The first is the difficulty in adopting the pure assumption that Voggesser could not voluntarily abandon his legal settlement in Audubon county. We say "pure assumption" because there is no evidence on the question in the record. The assumption is based solely upon the verbiage of the condition in the parole. On the question whether "compulsion" must be assumed from the fact of the condition, we should not ignore the character of these proceedings of the court. The suspending of sentence and granting of parole was a discretionary power conferred on the district court, by the legislature, as a matter of public policy. As said in Kirkpatrick v. Hollowell, 197 Iowa 927, 196 N. W. 91, 92, 198 N. W. 81:

"One purpose of such statutes is to give the truly reformed criminal an opportunity to re-establish himself as a law-abiding citizen and as a useful member of society and to permit him to have the opportunity so to do."

The suspension and parole was a matter of grace or favor, somewhat analogous to a pardon, on the part of the state. It was not a thing the defendant had the legal right to demand. Bennett v. Bradley, 216 Iowa 1267, 249 N. W. 651; Pagano v. Bechly, 211 Iowa 1294, 232 N. W. 798; Kirkpatrick v. Hollowell, 197 Iowa 927, 196 N. W. 91, 198 N. W. 81. Defendant having been sentenced was entitled to immediate incarceration

if he so chose, and rejection of suspension of the sentence and the parole was within his own power and discretion. Bennett v. Bradley, 216 Iowa 1267, 249 N. W. 651. Such being their essential characteristics, an assumption that in these court proceedings defendant was acting under compulsion is the equivalent of asserting that when a matter of grace and favor and personal benefit and opportunity, somewhat analogous to a pardon, was offered the defendant by the state, the transaction was of such a nature that in accepting these matters of grace and favor and of personal benefit to himself, although with the condition attached, the defendant was incapable of acting of his own free will. The statement of the proposition carries its own sufficient refutation as it appears to us. The thesis of appellee also necessarily includes the proposition that it was the district court that exerted the alleged compulsion, and this upon an entire lack of evidence on the question. In the absence of any such evidence, the presumption that the action of the court was regular and lawful in all respects, until otherwise shown, has application. There is no sufficient showing in the record to establish that Voggesser was under compulsion when he accepted the condition contained in the parole.

The other obstacle in the way of adopting appellee's contention is a difficulty in appellee's further assumption that Voggesser after leaving Audubon county could not exercise his free will, or any intent, to dwell as a resident of Cass County, and consequently, as appellee contends, could not and therefore did not acquire a statutory settlement in Cass county. Although a sufficient answer to appellee's claim just mentioned is the unsoundness, as above shown, of the assumption on which this latter assumption is based, nevertheless it has additional infirmities of its own; for even if it be assumed that when he left Audubon county Voggesser claimed he had been under compulsion and had not voluntarily abandoned his settlement in that county, yet appellee cannot escape the proposition that at any time this claim of fact could be waived or abandoned by Voggesser, and an intent formed by him to become a resident of some other county. Cerro Gordo County v. County of Wright, 50 Iowa 439; Hinds v. Hinds, 1 Iowa 36, loc. cit. 49. Thus the proposition that Voggesser could not become a resident of Cass county through exercise of his own free will, must be abandoned as unsound, and no other proposition or contention is advanced by

appellee to controvert the fact of the acquisition of a legal settlement by Voggesser and his family in Cass county. Appellee contesting the fact of legal settlement in Cass county by nothing more than whatever force its theories and arguments may have, and these having failed, it follows that the evidence in the case must control. This evidence discloses, and except as stated appellee does not deny, that Voggesser and his family acquired a legal settlement in Cass county prior to 1933 when appellee's claim arose. The case is reversed and remanded for a decree in equity in accord with this opinion.—Reversed and remanded.

DONEGAN, C. J., and STIGER, PARSONS, KINTZINGER, ALBERT, and ANDERSON, JJ., concur.