AUDUBON COUNTY, Appellee, v. MATHIAS VOGESSOR et al., Appellants.

No. 44894.

April 2, 1940.

H. Wayne Black, County Attorney, S. C. Kerberg, and Graham & Graham, for appellee.

Roscoe S. Jones, County Attorney, and Harry B. Swan, for appellants.

Stiger, J.—In October 1933, Cass county commenced a suit against Audubon county for support furnished Mathias and Helen Vogessor and for equitable relief.

On December 7, 1934, a decree was entered finding that the legal settlement of said poor persons was in Audubon county and directing they be removed to Audubon county at the expense of Cass county. No stay order having been obtained, on January 2, 1935, under the authority of the decree, they, with their six children, were moved to Audubon county by the overseer of the poor and a supervisor of Cass county. This family has remained in Audubon county since January 2, 1935. Over a year after they were moved to Audubon county by the officials of Cass county, Audubon county, on May 11, 1936, and on January 4, 1937, served notice on them to depart.

On appeal to this court from the above decree the case

was reversed and remanded for decree adjudicating the legal settlement of the family to be in Cass county. Cass County v. Audubon County, 221 Iowa 1037, 266 N. W. 293. Upon the issuance of a procedendo, a supplemental decree was entered in the lower court on June 10, 1937, in harmony with the opinion finding that the legal settlement on December 7, 1934, was in Cass county, and rescinding the order for removal of the family to Audubon county. On June 22, 1937, Audubon county notified Cass county to remove said poor persons and their six children from Audubon county to Cass county. Cass county did not comply with this notice.

In August 1937, Audubon county brought this suit asking that the legal settlement of the Vogessors be declared to be in Cass county and that the latter county be required to remove them to Cass county. Cass county filed a separate answer alleging: (1) The Vogessors resided in Audubon county continuously for a period of one year without being warned to depart; and (2) that they did not receive relief during said period.

Mr. and Mrs. Vogessor also pleaded lack of notice to depart and further alleged "that said defendants state that they have neither information nor knowledge sufficient to form a belief as to where their legal settlement may be, but that it is to their interest and to the interest of their family that the question of their legal settlement be now promptly determined."

The trial court found that:

"Their legal settlement at the time of their removal to Audubon County, Iowa, was in the defendant Cass County, Iowa, and that said settlement at all times continued to be in the defendant Cass County, Iowa, to the time of and during the trial of this cause, and that the said defendants, Mathias Vogessor and Helen Vogessor, and their family, were at the time of their said removal from Cass County, Iowa, to Audubon County, Iowa, and prior thereto, and since said time to the time of the trial of this cause being supported by public funds."

The finding of the trial court that, though no notice to

depart was served on defendants, they did not acquire a settlement in Audubon county because they were being supported by public funds is quite apparently based on the provisions of section 5311, paragraph 3, 1935 Code (section 3828.088, paragraph 3, 1939 Code).

Mathias and Helen Vogessor will be referred to herein as defendants and Cass county as appellant.

■ I. Section 5311, paragraph 1, 1931 Code, which was repealed by the Forty-fifth General Assembly, read:

"5311. Settlement—how acquired. A legal settlement in this state may be acquired as follows:

"1. Any adult person residing in this state one year without being warned to depart as provided in this chapter acquires a settlement in the county of his residence; provided any person who is an inmate of a private charitable institution not supported by public funds in any county in this state shall not acquire a settlement or a residence in said county for any purpose."

It will be observed that no warning to depart was necessary to prevent a legal settlement if the person was an inmate of a certain type of institution, as such inmate was prohibited from acquiring a settlement.

Chapter 99, Laws of the Forty-fifth General Assembly, repealed section 5311, 1931 Code, and enacted in lieu thereof section 5311, 1935 Code. The principal change in paragraph 1 of section 5311, 1931 Code, material to this appeal is found in paragraph 3, section 5311, 1935 Code, which reads:

"3. Any such person who is an inmate of or is supported by any institution whether organized for pecuniary profit or not or any institution supported by charitable or public funds in any county in this state or any person who is being supported by public funds shall not acquire a settlement in said county unless such person before becoming an inmate thereof or being supported thereby has a settlement in said county."

In adopting paragraph 3, the legislature made further

provisions for preventing the acquirement of a legal settlement by persons in certain institutions or supported by public funds, thereby increasing the exceptions to the statutory requirement of a warning to depart in order to prevent the acquisition of a settlement.

Among these provisions in paragraph 3 is the following:

"Any person who is being supported by public funds shall not acquire a settlement in said county [any county in the state] unless such person before * * * being supported thereby has a settlement in said county."

Statutes preventing the acquisition of a legal settlement by a poor person who is receiving relief are not uncommon in the several states. See 48 C. J., pages 476 and 478. At the time defendants were transported to Audubon county, they were supported by the public funds of Cass county. From January 2, 1935, to the time of the trial they were receiving work relief and supplemental relief orders from Audubon county, and during this period defendants were supported by public funds and therefore could not acquire a settlement in Audubon county and under such circumstances a warning to depart under sections 5311, 5315 or other sections of chapter 267, 1935 Code, was not necessary to prevent the acquisition of a legal settlement in Audubon county.

■■ II. The decree may also be sustained on plaintiff's proposition that defendants did not acquire a legal settlement in Audubon county because they did not voluntarily remove from Cass county to Audubon county and did not intend to remain in Audubon county indefinitely.

The case of Cass County v. Audubon County, 221 Iowa 1037, 1041, 266 N. W. 293, 295, Justice Richards speaking for the court, states the essential elements of a residence as follows:

"First, personal presence in a fixed and permanent abode, or permanency of occupation as distinct from lodging, boarding, or temporary occupation; and, second, an intention to there remain, without any present intention of removing therefrom."

Defendants did not remove to Audubon county voluntarily but were transported there by Cass county officials under authority of the decree of December 7, 1934, which stated that "they [defendants] are hereby ordered to be removed from Cass county, into Audubon county, at the expense of Cass county." Their residence in Audubon county was prescribed by order of court and was not acquired through the free choice or will of defendants. It is equally clear that the defendants, after being removed to Audubon county, did not accept the residence as their fixed permanent abode and did not intend to remain there indefinitely. The two counties were involved in controversies and litigation over this family from the time it was taken to Audubon county on January 2, 1935, until the trial of this case in the district court.

We quote briefly from the record.

Mrs. Vogessor testified:

"It never seemed to be settled in which county our residence was to be. I did not know where our home was to be. I was not claiming our residence was in Audubon county. I did not put in a garden in 1936 because I thought surely we would move down to Cass county. We did not know where our home was; of course, we thought they were going to take us back to Cass county and we did not put in any garden. The thing I am interested in is getting the matter settled so that I will not have to be wondering what county I am going to have to move to. I think we would like to live wherever the court decides our residence is so that we will know we have a home somewhere. Whatever the court decides is satisfactory to me."

Mr. Vogessor testified:

"We came to Audubon county because they told us we had to come because of the court order. We did not know where to go. I did not claim I belonged to Audubon county. We are going to wherever the county decided was our residence. I leave it up to the county as to where my residence

is, and that is the way I have felt about it ever since I was brought here."

Mr. Campbell, supervisor of Audubon county, testified:

"Well, he [Vogessor] did not like this house. I guess it wasn't big enough to suit him. He thought he belonged to Atlantic and still thought he should be back there."

The record shows defendants did not voluntarily choose Audubon county as their residence with the purpose of making it their home, and that they did not intend to remain in Audubon county indefinitely. In fact, they did not intend or desire to acquire another legal settlement on their own initiative but were waiting in Audubon county for the counties or the court to establish their legal settlement. As above stated the controversy between the counties over this family existed during all of the time they were in Audubon county and they remained there awaiting the final decision of the authorities or the court.

Under the circumstances, defendants did not acquire a settlement in Audubon county, such settlement remaining at all times in Cass county. See Cass County v. Audubon County, supra; Vanderpoel v. O'Hanlon, 53 Iowa 246, 5 N. W. 119.

The case is affirmed.—Affirmed.

HAMILTON, C. J., and BLISS, MILLER, SAGER, OLIVER, HALE, and MITCHELL, JJ., concur.