STATE of Iowa ex rel. Charles PALMER, Director, Division of Mental Health/Mental Retardation/Developmental Disabilities, Iowa Department of Human Services, Appellant,

v.

HANCOCK COUNTY, Hancock County Board of Supervisors, Appellees.

No. 88–1326.

Supreme Court of Iowa.

July 19, 1989.

Rehearing Denied Aug. 11, 1989.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., and Valencia Voyd McCown, Asst. Atty. Gen., for appellant.

Ted Hovda, County Atty., and Emil Trott, Jr. of Barrett & Trott, Des Moines, for appellees.

Considered by LARSON, P.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

LARSON, Justice.

"Lloyd B." is a mentally retarded adult presently living in a care facility in Winnebago County, Iowa. The district court concluded in this declaratory judgment action that under Iowa Code section 222.60(2) (1987), Lloyd's care must be provided by the State because he had no "legal settlement" within the state. The State appealed, claiming that Lloyd's legal settlement is Hancock County, which is required by Iowa Code section 222.60(1) to pay for his care. We affirm.

Lloyd was born in 1925, and at the age of twenty-one, he contracted a disease which left him mentally retarded and unable to care for himself. He lived with his parents on a farm in Hancock County from 1949 to 1966 when the farm was sold. For a brief time, the family lived in Thompson, Iowa,

with Lloyd's brother. Later in 1966, the family bought a travel trailer and began to spend about half of each succeeding year in Arizona or California. The other half of the year was spent, for the most part, in an apartment furnished by Lloyd's brother in Thompson, which is in Winnebago County.

In 1969, the family bought a home in Arizona and began to spend more of their time there, primarily because Lloyd's father suffered from arthritis. They continued to come back to Thompson during the summers. In 1971, Lloyd's father died. The Arizona home was sold, and Lloyd and his mother moved to California where they rented a home on a year-round basis. They continued to return to Thompson for three to four months in the summer. In 1981, when Lloyd's mother became unable to care for him, he was placed in the Handicap Village facility in Winnebago County, where he still resides.

For the first three years of Lloyd's stay in Handicap Village, his support was paid by a family trust. The assets of the trust were depleted, however, and in 1984 Lloyd became dependent on public funds for his support. The question then became whether, under Iowa Code section 222.60, the State or one of the counties involved, Winnebago or Hancock, would pay for it. (While the State originally looked to Winnebago County for payment, it now has abandoned that claim and looks to Hancock County alone.) The State began this declaratory judgment action pursuant to Iowa Code section 222.70 (1987) to determine who would be liable for Lloyd's support.

Iowa Code section 222.60 provides:

All necessary and legal expenses for the cost of admission or commitment or for the treatment, training, instruction, care, habilitation, support and transportation of patients in ... any public or private facility within or without the state, approved by the commissioner of the department of human services, shall be paid by either:

1. The county in which such person has legal settlement as defined in section 252.16.

2. The state when such person has no legal settlement or when such settlement is unknown.

The key phrase in section 222.60 is the "legal settlement" of the patient. Iowa Code section 252.16 provides, in relevant part, that

A legal settlement in this state may be acquired as follows:

1. A person continuously residing in a county in this state for a period of one year acquires a settlement in that county except as provided in subsection 7 [which has no application here].

2. A person having acquired a settlement in a county of this state shall not acquire a settlement in any other county until the person has continuously resided in the other county for a period of one year except as provided in subsection 7.

Section 252.17 provides that

[a] legal settlement once acquired shall so remain until such person has removed from this state for more than one year or has acquired a legal settlement in some other county or state.

Based, in part, on the evidence of Lloyd's residence in Iowa, Arizona, and California, as outlined above, the district court held that Lloyd's legal settlement was "outside of Iowa" thereby imposing the expense of his care on the State. *See* Iowa Code § 222.72.

The State contends that Hancock County remained Lloyd's legal settlement despite the fact that he had not actually resided there since 1966, because he had not (1) removed from Iowa for more than one year, nor (2) acquired a legal settlement in another county or state. *See* Iowa Code § 252.17. While the State asserts that neither alternative occurred; the county contends that they both occurred.

Under section 222.60(2), if no legal settlement is established, the State is liable for Lloyd's care. The State would therefore "suffer loss" if the issue of settlement were not established, and it therefore had the burden of proof on that issue. *See* Iowa R.App.P. 14(f)(5). Iowa Code sec-

tion 222.70 provides that a declaratory judgment action under that chapter shall be brought in equity. Our review, therefore, is de novo.

The State argues that Lloyd could not have "removed from the state" under section 252.17, so as to eliminate his legal settlement in Hancock County, because he has never lived out of Iowa continuously for a full year. He had always, prior to his moving to the care facility, returned to Iowa for at least part of the summer each year.

 Judging by the limited references to the term "legal settlement" in our Code, it is a concept used exclusively in the context of public care of indigents and other persons. *See, e.g.,* Iowa Code ch. 222 (care of mentally retarded); Iowa Code ch. 230 ("legal settlement" in care of substance abusers); Iowa Code § 252.24 (county of legal settlement liable for care of "poor persons"). *See* Webster's Third New International Dictionary 2079 (1981) ("settlement" defined as a "legal residence of a person in a particular parish or town that entitles him to maintenance if a pauper and subjects the parish or town to his support").

Legal settlement is not synonymous with residence or domicile. *State ex rel. Rankin v. Peisen,* 233 Iowa 865, 872, 10 N.W.2d 645, 647 (1943); *In re Newhouse,* 233 Iowa 1007, 1014–15, 9 N.W.2d 372, 375 (1943) (widow who lived in Iowa for over a year was "resident" of Iowa despite the fact she maintained a legal settlement in Nebraska); *Adams County v. Maxwell,* 202 Iowa 1327, 1329–30, 212 N.W. 152, 153 (1927).

That there is an essential difference between residence and a legal settlement, within the meaning of the statutes relating to the support of paupers, is apparent from a consideration of those statutes themselves. By Section 5311 [predecessor to present section 252.16] it is provided that an adult may acquire a settlement in the county of his residence by residing there one year, without warning to depart. Under Section 5315, a person cannot, after such warning, acquire a settlement, except by the requi-

site residence of one year without further warning. It would seem that one might be a resident of a county for years, and yet, by reason of successive and timely warnings to depart, never acquire a legal settlement there.

*Adams County,* 202 Iowa at 1329–30, 212 N.W. at 153.

Very few cases interpret the term "legal settlement"; however, one Iowa case provides this guidance:

[T]wo things would concur in the acquiring of a settlement in a given county by the poor person: First, personal presence in a fixed and permanent abode, or permanency of occupation as distinct from lodging, boarding, or temporary occupation; and, second, an intention to there remain, without any present intention of removing therefrom.

*Cass County v. Audubon County,* 221 Iowa 1037, 1041, 266 N.W. 293, 295 (1936).

Under Iowa Code sections 222.71 and 222.72, it is the person's settlement at the time of "admission or commitment" which determines who will be liable for the care of that person. Here, Lloyd had lived in Handicap Village since 1981, but originally he was supported there by the family trust. It was not until 1984, when the trust assets were exhausted, that he became dependent on the state or county. We therefore must determine where his legal settlement was as of October 1984.

 Under Iowa Code section 252.17, a legal settlement shall remain "until such person has removed from this state for more than one year." Removal is generally considered to be a change of domicile. *Ware v. Schintz,* 190 Ill. 189, 192, 60 N.E. 67, 69 (1931); *Barstow v. Stone,* 10 Colo. App. 396, 52 P. 48, 51 (1897).

The court of appeals addressed the issue of domicile in *Swanson v. Iowa Department of Revenue,* 414 N.W.2d 670 (Iowa App.1987). In *Swanson,* petitioner filed a tax protest petition on the ground that he was not a resident or domiciliary of Iowa for the years 1977–1981. After his protest was rejected at the administrative level, the district court affirmed the agency. In af-

firming the district court, the court of appeals stated that

> a domicile once acquired continues until a new one is perfected by the occurrence of three essential elements: (1) a definite abandonment of the former domicile; (2) actual removal to, and physical presence in the new domicile; [and] (3) a bona fide intention to change and to remain in the new domicile permanently or indefinitely. The requisite element of intent to change one's domicile necessarily includes an intention to abandon the former domicile, and to do so permanently.

*Swanson,* 414 N.W.2d at 672 (citations omitted).

 When Lloyd's family sold their Hancock County farm in 1966 and moved out of the state, we believe they abandoned their Hancock County domicile for purposes of legal settlement, and that an actual removal to another state followed—first Arizona and then California. Although the family returned to Iowa each year, that fact did not change their domicile or cause Lloyd's legal settlement to be retained in Hancock County. The requirement of section 252.-17, that a person have "removed from this state for more than one year" in order to change legal settlement, is not affected by the fact that Lloyd returned to Iowa, even though on a fairly regular basis. A finding of such intent and removal is supported by testimony of Lloyd's brother in the following colloquy at trial:

> Q. How long did your mother and Lloyd stay in your apartment [in Thompson]? A. Not very long. They didn't seem to like it there. They wanted to go back where it was warmer to really make it their home.

The State points to the fact that Lloyd's father's estate was probated in Iowa in 1971 and that Lloyd's parents filed Iowa income tax returns after they left the state. While the fact that residence was claimed on the tax returns must be considered, this is not conclusive on the question of residence and is even less persuasive on the separate question of legal settlement. It is not clear whether the income tax returns were filed as Iowa resident returns or non-resident returns. Also, it must be noted that all of these tax returns claimed residence in Winnebago County, not Hancock. Lloyd and his family simply had no significant connections with Hancock County after 1966.

The record establishes that the family, including Lloyd, had "removed" from Hancock County in 1966. Their temporary sojourns to Iowa each summer did not mean that they had not "removed" from Iowa for purposes of establishing legal settlement. We therefore agree with the district court that the State failed to prove the legal settlement of Lloyd to be in Hancock County and therefore affirm.

AFFIRMED.