**STATE of Iowa ex rel. Charles PALMER, a Director, Division of Mental Health, Mental Health Retardation and Developmental Disabilities, Iowa Department of Human Services, Appellant,**

v.

**DUBUQUE COUNTY and the Dubuque County Board of Supervisors; Donna Smith, Chair; Lloyd Hayes and Wilfred Bahl, Members of the Board; and Terrance Hirsch, Dubuque County Auditor, Appellees.**

No. 90–401.

Supreme Court of Iowa.

July 17, 1991.

Rehearing Denied Sept. 18, 1991.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., and Valencia Voyd McCown, Asst. Atty. Gen., for appellant.

Fred A. McCaw, County Atty., and Jean A. Becker, Asst. County Atty., for appellees.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, LAVORATO, and NEUMAN, JJ.

CARTER, Justice.

This is a dispute between the State and Dubuque County concerning which of these entities is responsible for the care of Isaac B. at the state mental health institute (MHI) at Independence. The State asserts that Dubuque County is liable for these costs because Isaac B. acquired a legal settlement in that county prior to his institutionalization. The district court found that Isaac B. never acquired a legal settlement in Dubuque County and that the State therefore remained liable for his MHI costs pursuant to Iowa Code section 222.60 (1989). After considering the arguments of the parties, we affirm the district court.

Isaac B. is mildly mentally retarded. He was born in 1929 in Illinois and moved to Dubuque, Iowa, in 1951. On March 26, 1952, the Dubuque County District Court found him to be "feebleminded" and ordered that he be committed to the Woodward State Hospital–School. At that time, Isaac's legal settlement was outside the state of Iowa because he had not lived in Iowa for at least a year.

Isaac was transferred to other facilities and received various types of services. In 1977, Isaac received services from the Training and Reinvolving Adults in the Community Environment Program (TRACE) while he resided in the Dubuque County Care Facility. He also received various social services from Area Residential Care (ARC) and the Department of Human Services (DHS). He became involved in ARC's Vocational Center Program and DHS' Client Assessments Case Management Services.

In July 1980, Isaac entered ARC's Apartment Program which located an apartment in Dubuque for him to share with another man in the program. Isaac self-terminated from the apartment program in June 1981. He continued to live independently in Dubuque until January 1985, when he was committed to the MHI. He also continued to receive vocational training from ARC, as well as social services from DHS, during that time.

Between June 1981 and January 1985, Isaac changed apartments several times, living alone until he was married in 1983. His marriage dissolved in early 1984. He continued to maintain contact with a DHS caseworker every three to six months. This contact allowed DHS to monitor the services Isaac was receiving from ARC. From 1981 until September 1984, Isaac worked as a janitor through ARC's vocational training program. Although he earned wages through this program, those wages were applied to reduce the amount of SSI disability benefits he received. These ARC wages added approximately $2000 to $3000 per year to his income. Isaac's SSI payments alone would have provided only $300 per month. His work was constantly monitored and periodically evaluated.

Isaac was terminated from the vocational training program on September 27, 1984, as a result of inappropriate work behavior. He was committed to MHI in January 1985.

At the outset, we note a concession by the County that the district court incorrectly applied Iowa Code section 252.16(8) (1989) in deciding the case. That subsection, adopted after the relevant time period affecting the situation of Isaac B. provides:

A person receiving treatment or support services from any community-based provider of treatment or services for mental retardation, developmental disabilities, mental health, or substance abuse does not acquire legal settlement in the host county unless the person continuously resides in the host county for one year from the date of the last treatment or support service received by the person.

*Id.* As we indicate later in this opinion, this statute will govern disputes such as this in the future. It does not, however, retroactively govern the present case.

■ The legal settlement issue in the present case is governed by Iowa Code section 252.16(3) (1989), which provides:

A person who is an inpatient, a resident, or an inmate of or *is supported by an institution* whether organized for pecu-

niary profit or not or an institution supported by charitable or public funds in a county in this state does not acquire a settlement in the county unless the person before becoming an inpatient, a resident, or an inmate in the institution or being supported by an institution has a settlement in the county.

*Id.* (emphasis added). In applying this statute, the State concedes that ARC is an "institution" under subsection 3. Therefore, the ultimate issue is whether Isaac was "supported by" ARC within the context of the legislation. If the services he received constitute "support," he remains a charge of the State under section 222.60. If not, he acquired legal settlement in Dubuque County, and the State's responsibility ended at that time.

The State argues that sometime between 1981 and 1985 Isaac began living independently, and ARC was not providing him with necessities of life. As a result of such independence, the State urges, he was not being "supported by an institution" so as to preclude his acquisition of a legal settlement in Dubuque County pursuant to section 252.16(3). In response to this argument, the County contends that any earnings which Isaac received from employment during this period were entirely attributable to his continued enrollment in the ARC vocational training program. Absent that program, the County argues, Isaac would have been unable to find employment. As a result, it argues he was "supported by an institution" at all relevant times between 1981 and 1985 and thus did not acquire a legal settlement in the county.

■ The State has the burden of proof to establish a change in Isaac's legal settlement to Dubuque County. *State ex rel. Palmer v. Hancock County*, 443 N.W.2d 690, 691 (Iowa 1989). Legal settlement is similar to the concept of domicile. *Id.* at 692. It requires more than mere physical presence in the county. *Audubon County v. Vogessor*, 228 Iowa 281, 286, 291 N.W. 135, 136 (1940); *see also County of Ramsey v. County of Sherburne*, 281 N.W.2d 888, 891 (Minn.1979). The individual must intend to remain in the county of legal settlement indefinitely. *Hancock County*, 443 N.W.2d at 692; *Audubon County*, 228 Iowa at 285, 291 N.W. at 136. The concept of legal settlement is meant to allow assessment of expenses and responsibility to the county in which the individual lived and which received the benefits of the individual's residence prior to the need for public assistance. *County of Ramsey*, 281 N.W.2d at 891.

No Iowa cases have considered whether the legal settlement of a person affected by mental retardation changes when that person is released from an institution to receive the type of community-based services Isaac received in Dubuque. At least three opinions of the attorney general have considered this issue, however, with the following results:

1. To the extent that services provided by a community supervised apartment living arrangement are essential for persons to operate in a residential setting, the services constitute support by an institution. Such persons are precluded from acquiring a new legal settlement in the county in which they receive such services.

1988 Op. Iowa Att'y Gen. 30.

2. The term "supported by an institution" is a phrase of general welfare and includes provision of food, clothing, shelter and other necessaries of life.

1982 Op. Iowa Att'y Gen. 510.

3. As long as a mentally retarded person remains under the auspice of the Goodwill Sheltered Workshop, he does not acquire a new legal settlement. The person was employed and supervised by Goodwill. He had never become self-supporting and had to rely on Goodwill for funding and supervision.

1976 Op. Iowa Att'y Gen. 400.

The foregoing opinions of the attorney general appear to contradict the State's position on this appeal. Isaac's vocational training program through ARC seems indistinguishable from the Goodwill Sheltered Workshop in the 1976 opinion. That opinion also relied on Iowa Code section 222.77 for its conclusion that the formerly institutionalized mentally retarded person

had not changed legal settlement. That section provides that "[t]he cost of support of patients placed on convalescent leave or removed as a habilitation measure from a hospital-school, or a special unit ... [shall be charged] in the same manner as other state inpatients until the patient becomes self-supporting." The Goodwill Sheltered Workshop was considered a "habilitation measure" under section 222.77. While the former inpatient was involved in the sheltered workshop, his legal settlement did not change.

We discern an intent in these statutes to allow a disabled person, wherever possible, to remain in normal community settings with appropriate treatment, care, rehabilitation, and education. Saddling Dubuque County with the costs of Isaac's care would, we believe, provide a strong disincentive for the County to carry out that policy. Perhaps considerations of this type led to the enactment of subsection 8 of section 252.16 in 1987. Subsequently enacted statutes may, depending on the circumstances, indicate either an intent to change existing law or an intent merely to clarify a doubtful statute. *Knight v. Iowa Dist. Court,* 269 N.W.2d 430, 434 (Iowa 1978); *Dye v. Markey,* 259 Iowa 1045, 1047, 147 N.W.2d 42, 43 (1966).

We do not believe it is necessary in the present case to rely on the 1987 amendment in order to sustain the district court's ultimate conclusion. We agree with the County that any independent means which Isaac enjoyed from employment between 1981 and 1985 would not have been available to him absent his continued involvement in the ARC vocational training project. That circumstance, we believe, constitutes "support by an institution" so as to preclude acquisition of a legal settlement in Dubuque County under section 252.16(3).

We have considered all arguments presented and find no basis for overturning the decision of the district court.

AFFIRMED.