**STATE of Iowa ex rel. Charles M. PALMER, Director of the Iowa Department of Human Services, Appellant,**

v.

**CASS COUNTY and Cass County Board of Supervisors, Appellees.**

No. 93–1498.

Supreme Court of Iowa.

Oct. 19, 1994.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., and Richard E. Ramsey, Asst. Atty. Gen., for appellant.

James P. Barry, County Atty., for appellees.

Considered by HARRIS, P.J., and LARSON, CARTER, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

This appeal involves a dispute between the State of Iowa and Cass County over which governmental entity is responsible for the costs associated with the care of a mentally retarded person. The district court held that the State is liable to pay for the care of the individual and that the State must reimburse the County for amounts the County previously expended on services for the individual. We affirm.

### I. *Background.*

V.H. was born in California in 1955. She was diagnosed as mentally retarded while living in California. She lived with her mother until 1973 when she was institutionalized in a California state hospital. V.H. later transferred to a residential program where she remained until 1980 when she and her family moved to Nebraska. In Nebraska, V.H. lived at home and participated in EN-CORE, a work activity program.

In March 1984, V.H. and her mother moved to Lewis, Cass County, Iowa, to live with an uncle. In May V.H., then twenty-nine years old, began receiving services, including vocational training, through CASS, Inc. (CASS), a community-based provider in Cass County. She also received services from the Iowa Department of Human Services (DHS).

In 1984 an employee for DHS determined that V.H.'s legal settlement was in Cass County. Cass County, therefore, began paying for services provided to V.H. In September 1992 the State advised the County that V.H. was eligible for payment for services from state funds. The State had reevaluated her legal settlement and determined that she did not have legal settlement in Cass County. The State agreed that it would pay for her current services but refused to reimburse Cass County for expenditures incurred between 1984 and 1992. The County had expended $39,787.43 for those services. Later, the State reconsidered its position and concluded that V.H. obtained legal settlement in Cass County sometime between 1984 and 1988 and therefore she did not qualify for payments from state funds. Cass County disputed that V.H. had obtained legal settlement in the County.

In 1993 the State filed a petition for declaratory judgment in district court asking that the court declare V.H. had legal settle-

ment in Cass County. At trial the parties stipulated to all facts and exhibits.

CASS is a provider of services for the mentally retarded. V.H. received vocational training at CASS for which she earned wages. The wages she earned supplemented income she received from other governmental programs. She earned approximately $127 per month from CASS and received $437 per month from federal social security disability and supplemental benefits. V.H. would not be capable of finding employment other than her work at CASS. Although V.H.'s mother and uncle provided some support for V.H., her wages were used to their fullest extent for her support and maintenance.

The services V.H. received at CASS also included training to enable her to live independently. Some examples of the training she received are: learning the value of money and how to use it, learning street safety and how to get around town on her own, learning social skills, and learning cleaning and basic kitchen skills. In addition to providing V.H. with services designed to increase her ability to function independently in the community, CASS provided her with daily supervision. V.H. needs full-time supervision which her mother and uncle are unable to provide. The type of services provided to her by CASS and the DHS permits her to live on a more independent basis than she otherwise could so she does not have to be institutionalized or placed in a residential setting.

The district court found that V.H. was "supported by" CASS and therefore never acquired legal settlement in Cass County. The court held the State must reimburse Cass County for the monies expended upon her behalf from 1984 through 1992. The State appeals.

On appeal the State urges that V.H. had legal settlement in Cass County because she continuously lived with her mother and uncle and they provided some support for her in the way of food and shelter. The State also argues that if V.H. does not have legal settlement in Cass County, it should not be required to reimburse the County for the amount it spent on services for V.H.

## II.  *Standard of Review.*

■ A declaratory judgment action to determine the legal settlement of a person under chapter 222 is tried in equity. Iowa Code § 222.70 (1993). Our review, therefore, is de novo. Iowa R.App.P. 4; *State ex rel. Palmer v. Hancock County,* 443 N.W.2d 690, 691–92 (Iowa 1989).

## III.  *Legal Settlement.*

■ "Legal settlement" for the purpose of chapter 222 is defined in Iowa Code section 252.16. Iowa Code § 222.60. Subsection 252.16(1) provides that an individual may acquire legal settlement by "continuously residing in a county in this state for a period of one year." However, subsection 252.16(3) prevents certain individuals from acquiring legal settlement in a county. Subsection 252.16(3) states in part:

> A person who is an inpatient, a resident, or an inmate of or is supported by an institution whether organized for pecuniary profit or not or an institution supported by charitable or public funds in a county in this state does not acquire a settlement in the county unless the person before becoming an inpatient, a resident, or an inmate in the institution or being supported by an institution has a settlement in the county.

The parties concede CASS is an institution for the purpose of subsection 252.16(3). The determinative issue is whether V.H. was "supported by" CASS and thereby prevented from acquiring a legal settlement in Cass County.

■ The State has the burden of proof of establishing V.H.'s legal settlement. *State ex rel. Palmer v. Dubuque County,* 473 N.W.2d 190, 192 (Iowa 1991); *Hancock County,* 443 N.W.2d at 691. Legal settlement is a concept used exclusively in the context of public care of indigents and other persons. *Hancock County,* 443 N.W.2d at 692 (citations omitted). It requires more than mere physical presence in the county. *Dubuque County,* 473 N.W.2d at 192; *Audubon County v. Vogessor,* 228 Iowa 281, 286, 291 N.W. 135, 136 (1940). The concept of legal settlement attempts to assess expenses

and responsibilities to the county which received the benefits of the individual's residence prior to the need for assistance. *Dubuque County*, 473 N.W.2d at 192.

In *Dubuque County* we addressed the issue of whether the legal settlement of a mentally retarded individual changes when that person is released from an institution and receives vocational training from a community-based provider. *Id.* at 192–93. There we considered whether a person who worked at a vocational training program similar to CASS was "supported by" that program under the provisions of Iowa Code subsection 252.16(3). We held that he was.

The State attempts to distinguish *Dubuque County* by emphasizing the individual in that case was released from an institution and then received services from a community-based provider; whereas V.H. was never institutionalized in Iowa and has continuously resided with her mother and uncle. The State asserts that V.H. only received services from CASS in the form of work activity, not any of the necessities of life, which it argues were provided by her mother and uncle. The State argues the term "support," although not defined in chapter 252, refers to the provision of life necessities, such as food, clothing, and shelter.

In *Dubuque County* the individual lived in his own apartment after an initial stint in an apartment program. The wages he earned from the vocational training program increased his income in an amount that would not have been available to him if he had not been enrolled in the program. The program did not provide him with shelter, clothing or meals. We held that the wages paid to him from the vocational training program constituted "support by an institution" precluding him from acquiring legal settlement in Dubuque County. *Dubuque County*, 473 N.W.2d at 193.

Here the parties agree that V.H. would not be employable outside of her work at CASS and that the money she earned at CASS was used to provide for her needs. The money she earned at CASS increased the means she had to pay for her needs, and would not have been available to her if she were not enrolled in the CASS program. Her mother and uncle merely supplemented V.H.'s support. V.H. was "supported by" CASS and thus did not acquire a legal settlement in the County.

In addition to providing V.H. with a job, CASS provided her with services—supervision and life skills training—which enabled her to live outside of an institutionalized setting. We determined in *Dubuque County* that the intent of the statutes relating to the mentally retarded is "to allow a disabled person, whenever possible, to remain in normal community settings with appropriate treatment, care, rehabilitation, and education." *Id.* 473 N.W.2d at 193. Requiring the county to pay the costs of V.H.'s care when it would not have to pay if she instead had been institutionalized would discourage the county from providing the services. This would stifle the statutory intent. *See id.* We conclude V.H. did not have legal settlement in Cass County.

## IV. *Reimbursement.*

■ The State argues that even if V.H. never attained a legal settlement in Cass County, it should not be required to reimburse the County for expenditures made on her behalf. Iowa Code section 222.60 provides:

> All necessary and legal expenses for the cost of admission or commitment or for the treatment, training, instruction, care, habilitation, support and transportation of patients in a state hospital-school for the mentally retarded, or in a special unit, or any public or private facility within or without the state, approved by the director of the department of human services, shall be paid for by either:
>
> 1. The county in which the person has legal settlement as defined by section 252.16.
>
> 2. The state when such person has no legal settlement or when such settlement is unknown.

Because V.H. is a mentally retarded individual receiving training and instruction at a facility approved by DHS, the services fall under this section. Section 222.60 does not, as the State argues, require commitment or admission to a state hospital-school before its

provisions apply. Because V.H. has no legal settlement in Iowa, the State is obligated to pay for the services. Section 222.72 provides in part:

If the court finds that the legal settlement of said mentally retarded person, at the time of admission or commitment was outside the state or was unknown an order shall be entered that the mentally retarded person shall be maintained in the hospital-school or the special unit at the expense of the state. In such case, the state shall refund to any county all necessary and legal expenses for the cost of said admission or commitment paid by a county.

The obvious intent of this statutory provision is to allow a county to be reimbursed for costs paid by a county that are the responsibility of the State under section 222.60.

The State also claims that it is permitted to reimburse Cass County only for services provided after September 22, 1992, the date the application for state payment was made. The State argues that the regulations provide that an applicant's eligibility for the state payment program is effective from the date of the application. Iowa Admin.Code r. 441–153.51, .52, and .56(3). We conclude the regulations provide for an effective date for payment but do not prohibit reimbursement to a county that has made payment for an applicant's services when the services are to be paid by the State. Sections 222.60 and 222.72 clearly provide that the State must reimburse the County for all expenditures made by the County on behalf of V.H.

**AFFIRMED.**