**STATE of Iowa ex rel. Charles M. PALM-ER, Director of the Iowa Department of Human Services, Appellee,**

v.

**HOWARD COUNTY, Howard County Board of Supervisors, Appellants,**

and

**Fayette County, Fayette County Board of Supervisors, Appellees.**

No. 94–1480.

Supreme Court of Iowa.

Oct. 25, 1995.

Joseph M. Haskovec, County Attorney, for appellant.

W. Wayne Saur, County Attorney, for appellee Fayette County.

Richard E. Ramsay, Assistant Attorney General, for appellee State.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

LAVORATO, Justice.

This appeal arises from a dispute between Howard County and Fayette County over which county is responsible for the costs associated with the public care of T.Z. after December 1987. The issue turns on T.Z.'s legal settlement. The State filed a declaratory judgment action, asking the court to determine whether T.Z. acquired legal settlement in Howard County or Fayette County. The district court concluded T.Z.'s legal settlement is in Howard County as of December 1988 and for that reason Howard County is responsible for the costs associated with the public care of T.Z. We agree and affirm.

At the trial of the State's declaratory judgment action, the parties stipulated to the following facts. T.Z. is mentally retarded and has cerebral palsy. T.Z. lived with her parents in Oelwein, Fayette County, Iowa until her graduation from high school. As of December 1987, T.Z. had legal settlement in Fayette County, Iowa.

In December 1987, T.Z. moved to Cresco in Howard County. In January 1988, T.Z. reapplied for Vocational Rehabilitation services and began receiving vocational counseling. T.Z. continued to receive the services provided until July 11, 1988, when services to her were closed.

In September 1988, T.Z. obtained employment as a dishwasher. She commuted to her job in Decorah from her home in Cresco. On September 15 T.Z. again applied for services through Vocational Rehabilitation and received vocational counseling. This counseling was terminated on December 8, 1988.

T.Z. quit her dish washing job in February 1989. She began receiving counseling at the Northeast Iowa Mental Health Center in Decorah in July 1989. This counseling continued until February 1990.

In June 1990, T.Z. moved from Howard County to Fayette County. In the same month, T.Z.'s case management supervisor sent an interoffice memo to the Iowa Department of Human Services (DHS), requesting a determination of T.Z.'s legal settlement. The DHS determined T.Z. acquired legal settlement in Howard County as of February

1990. DHS sent a copy of this memorandum to Fayette and Howard County personnel.

About two years passed. On May 26, 1992, the Howard County auditor sent a letter to the Fayette County auditor. The letter stated Howard County did not feel obligated to give T.Z. the Goodwill funding Fayette County was requesting because she was not determined to have a legal settlement in Howard County. In October the district court entered an interim order directing Howard County to pay all of T.Z.'s expenses for care and services pending a determination of T.Z.'s legal settlement.

The DHS filed a petition for declaratory judgment in December, naming as defendants Howard County, the Howard County Board of Supervisors, Fayette County, and the Fayette County Board of Supervisors. The petition was filed in Howard County pursuant to Iowa Code section 222.70 (1991) to determine which county was the place of T.Z.'s legal settlement. *See* Iowa Code § 222.70 (in case of dispute between counties as to legal settlement of mentally retarded person, statute authorizes attorney general to file action to determine such legal settlement in the county where the dispute arises). The petition further requested an order requiring the county of T.Z.'s legal settlement to pay for the accumulated costs for the care and treatment provided T.Z.

Each county answered, denied liability, and moved to dismiss the petition against it. The district court heard the case via telephone on stipulated facts, exhibits, and the testimony of one witness. Following this hearing, the district court concluded that T.Z. acquired legal settlement in Howard County.

Howard County filed a rule 179(b) motion, requesting the court to modify its decision to reflect that T.Z. acquired legal settlement in Howard County as of December 9, 1992—the date the State filed the declaratory judgment action. *See* Iowa R.Civ.P. 179(b). Fayette County resisted and filed a rule 179(b) motion. In its motion, Fayette County asked the court to establish the date of legal settlement in Howard County as of December 1988.

Over Howard County's resistance, the court concluded T.Z. acquired legal settlement in Howard County as of December 1988. Howard County appealed from this ruling.

Declaratory judgment actions to determine the legal settlement of an individual under Iowa Code chapter 222 are tried in equity. Iowa Code § 222.70; *State ex rel. Palmer v. Cass County*, 522 N.W.2d 615, 617 (Iowa 1994). Our review is therefore de novo. Iowa R.App.P. 4.

As we said, which county bears the cost associated with the public care of T.Z. turns on T.Z.'s legal settlement. Two code sections govern the legal settlement issue in this case: Iowa Code section 222.60 and Iowa Code section 252.16.

Iowa Code chapter 222 deals with mentally retarded persons. Under Iowa Code section 222.60,

[a]ll necessary and legal expenses for the cost of admission or commitment or for the treatment, training, instruction, care, habilitation, support and transportation of patients in a state hospital-school for the mentally retarded, or in a special unit, or any public or private facility within or without the state, approved by the director of the department of human services, shall be paid by either:

1. *The county in which such person has legal settlement as defined in section 252.16.*

2. The state when such person has no legal settlement or when such settlement is unknown.

(Emphasis added.)

Iowa Code chapter 252 deals with support of the poor. *See* Iowa Code § 252.1 ("The words *'poor'* and *'poor person'* as used in this chapter shall be construed to mean those who have no property, exempt or otherwise, and are unable, because of physical or mental disabilities, to earn a living by labor...."). Iowa Code section 252.16(1) pertinently provides that a legal settlement is acquired by "[a] person continuously residing in a county in this state for a period of one

year ... except as provided in subsection ... 8."

Under section 252.16(8),

*[a] person receiving* treatment or *support services from any community-based provider of* treatment or *services for mental retardation,* developmental disabilities, mental health, or substance abuse, *does not acquire legal settlement in the host county unless the person continuously resides in the host county for one year from the date of the last* treatment or *support services received by the person.*

(Emphasis added.) In short, section 252.16(8) prevents a mentally retarded person from acquiring legal settlement in the county in which the person is living if that person is receiving services for mental retardation from any community-based provider of such services. To acquire legal settlement, the mentally retarded person must continuously reside in the county for one year from the date of the last support services received by such person.

Recently, we described the concept of legal settlement this way:

Legal settlement is a concept used exclusively in the context of public care of indigents and other persons. It requires more than mere physical presence in the county. The concept of legal settlement attempts to assess expenses and responsibilities to the county which received the benefits of the individual's residence prior to the need for assistance.

*Cass County,* 522 N.W.2d at 617–18 (citations omitted).

Here the issue is whether Howard County or Fayette County is the county of legal settlement. This issue turns on the narrow question of whether Vocational Rehabilitation is a community-based provider of services for mental retardation.

The stipulated facts establish that before moving to Howard County in December 1987, T.Z.'s legal settlement was Fayette County. T.Z. continuously resided in Howard County from December 1987 until June 1990—approximately thirty months. From December 1987 until December 1988—the critical one-year period—T.Z. received ser-

vices from Vocational Rehabilitation during two time periods. The first time period was from approximately January 1988 to July 1988. The second time period was from approximately September 1988 through December 1988.

As Fayette County correctly points out, if the services from Vocational Rehabilitation during those two time periods constitute services from a community-based provider of services for mental retardation, then Fayette County remains T.Z.'s county of legal settlement. If not, then Howard County—as the district court found—became her county of legal settlement in December 1988.

■ Because the legislature has not defined "community-based provider," we give those words their common and ordinary meaning. *State v. Bessenecker,* 404 N.W.2d 134, 136 (Iowa 1987). "Community" is defined as "the people living in a particular place or region and usually linked by common interests." Webster's Third New International Dictionary 460 (P.Gove ed. 1993). "Provide" means to "supply what is needed for sustenance or support." *Id.* at 1827. A provider, of course, is one who supplies what is needed for sustenance or support. *Id.* A community-based provider then is an entity that provides what is needed for sustenance or support and is located among people living in a particular place or region and linked by common interests.

Howard County argues for a broad interpretation of community: the whole state constituting the community. In contrast, Fayette County argues for a restricted interpretation of community: the county constituting the community.

These two contrasting interpretations simply underscore the notion that "community" has a flexible meaning and takes its meaning from context. *In re Idaho Hosp. Ass'n,* 76 Idaho 34, 37, 277 P.2d 287, 290 (1954). We think therefore in determining what the legislature intended by the words "community-based provider," we must consider what the legislature sought to accomplish. Our interpretation should be a reasonable one that will best accomplish the purpose of the statute

and avoid an unreasonable result. *Besse-necker,* 404 N.W.2d at 137.

In 1987, the legislature enacted subsection 8—the "community-based provider" provision—of section 252.16. *See* 1987 Iowa Acts ch. 50, § 2. We touched on subsection 8 in *State ex rel. Palmer v. Dubuque County,* 473 N.W.2d 190 (Iowa 1991).

In *Dubuque County,* the dispute was between the State and Dubuque County over which entity was responsible for the care of a mentally retarded person. The issue turned on the legal settlement of the mentally retarded person. Iowa Code section 252.16(3) (1989) governed the legal settlement issue in that case. This section pertinently provided that

[a] person who is an inpatient, a resident, or an inmate of or is supported by an institution whether organized for pecuniary profit or not or an institution supported by charitable or public funds in a county in this state does not acquire a settlement in the county unless the person before becoming an inpatient, a resident, or an inmate in the institution or being supported by an institution has a settlement in the county.

In *Dubuque County,* the mentally retarded person was enrolled in an Area Residential Care (ARC) vocational training program in Dubuque County. The parties conceded that ARC was an institution under subsection 3. Although the person lived independently in Dubuque after being released from a state institution, we held he was supported by ARC during all relevant time periods (four years) and did not acquire a legal settlement in Dubuque County. The support was in the form of wages he earned that were entirely attributable to his continued enrollment in the ARC vocational training program. We held that without that support he could not have lived independently in Dubuque. *Dubuque County,* 473 N.W.2d at 193.

In the course of that opinion we discerned a common legislative intent in three statutes: Iowa Code section 252.16(3) (the provision under consideration in *Dubuque County* ), Iowa Code section 222.77 (a provision that provides that "[t]he cost of support of patients placed on convalescent leave or re-moved as a habilitation measure from a hospital-school, or a special unit ... [shall be charged] on abstract in the same manner as other state inpatients until the patient becomes self-supporting"), and Iowa Code section 252.16(8) (the community-based provider provision). That intent is "to allow a disabled person, wherever possible, to remain in normal community settings with appropriate treatment, care, rehabilitation, and education." *Dubuque County,* 473 N.W.2d at 193. As to this intent, we concluded that

[s]addling Dubuque County with the costs of [the mentally retarded person's] care would ... provide a strong disincentive for the County to carry out that policy. Perhaps considerations of this type led to the enactment of subsection 8 of section 252.16 in 1987.

*Id.*

We now conclude that the legislature enacted subsection 8 of section 252.16 to encourage counties to provide services to enable disabled persons—wherever possible—to remain in normal community settings, with appropriate treatment, care, rehabilitation, and education. Section 252.16 allows counties to establish providers within their borders and fund them without fear that the providers' services will subject the counties to liability for the care of the mentally retarded. So when the legislature used the words "community-based provider" in subsection 8, we think it meant a county-based and county-funded provider. Our interpretation is consistent with the intent underlying subsection 8.

Our interpretation of the words "community-based provider" is not only consistent with the legislative intent underlying subsection 8, but it also avoids an unreasonable result. A broad interpretation of "community-based provider" would mean mentally retarded persons could never change their legal settlement so long as they were receiving services from a provider located anywhere in the State and regardless of who provided the funding.

■ Turning to the merits, we adopt the district court's following findings of fact:

Vocational Rehabilitation ... services [are] made available to persons unemployed because of a disability. The disabilities for which the services are provided cover a broad range—both physical and mental. The disabilities include blindness, cancer, deafness, respiratory illnesses, etc. Mental retardation and cerebral palsy would both qualify as disabilities for which Vocational Rehabilitation can be provided.

Vocational Rehabilitation services are not provided on the basis of legal settlement; rather, they are provided on the basis of where the client is located or found. A person from outside of the state can move into Iowa and secure Vocational Rehabilitation without any minimal residency. Vocational Rehabilitation is funded eighty percent with federal dollars and twenty percent with State dollars. No county dollars fund Vocational Rehabilitation.

There are thirteen area offices for Vocational Rehabilitation in Iowa and approximately twenty-six branch offices, for a total of thirty-nine offices throughout the State of Iowa.

Additionally, the Dubuque area office services Fayette and Howard Counties. The Dubuque area office has a branch office in Buchanan County that services Fayette County and a branch office in Winneshiek County that services Howard County.

Because Vocational Rehabilitation is not county-based and not county-funded, we— like the district court—conclude it is not a "community-based provider" as contemplated in subsection 8 of section 252.16. This result should not discourage any county in Howard County's position from establishing community-based providers within the county's borders to provide support services to the mentally retarded. Accordingly, we conclude the district court was correct when it found that Howard County became the legal settlement of T.Z. as of December 1988. We therefore affirm.

**AFFIRMED.**