522 N.W.2d 824 (1994)
In the Matter of D.N., Alleged to be Seriously Mentally Impaired,
Decatur County, Iowa, Appellee,
State of Iowa, Appellant.
No. 93-985.
Supreme Court of Iowa.
October 19, 1994.
*825 Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., Richard E. Ramsay, Asst. Atty. Gen., for appellant.
Carlton G. Salmons of Austin, Gaudineer, Austin, Salmons & Swanson, Des Moines, for appellee.
Considered by HARRIS, P.J., and LARSON, CARTER, SNELL, and ANDREASEN, JJ.
ANDREASEN, Justice.
The primary issue in this appeal is whether an individual who was removed from this state for more than one year to receive care and treatment in another state lost his county of legal settlement. The district court held the individual lost his legal settlement in Decatur County when he removed to a community-based provider in Missouri for five and one-half years, and therefore the State is liable for the cost of his care after he returned to Iowa. The State appeals and the County cross-appeals. We affirm.

*826 I. Background.

The parties stipulated to the material facts of this case. D.N. was born in 1957 in Palo Alto County, Iowa. His family moved to Leon, Decatur County, Iowa, when he was ten years old. He and his family still lived in Decatur County in 1974 when he, then seventeen years old, was hit by a car and severely injured. The accident left him brain damaged and confined to a wheelchair. He was hospitalized and later placed in several treatment facilities. In the meantime he turned eighteen, and his mother became his legal guardian and conservator. In addition to staying in various treatment facilities, he made an unsuccessful attempt to live at home with his parents. After the failed attempt to live with his parents, on October 7, 1983, Loretta Kelly, a family friend, was appointed as guardian and conservator (guardian).
In June 1985, D.N. was placed in Lamoni Manor, in Lamoni, Iowa. This placement lasted only until November 1985 when he was discharged for inappropriate behavior. Because of his history of inappropriate behavior, his guardian and the local Department of Human Services' (DHS) worker had difficulty finding a placement for him. The only facility that would accept him for long-term placement was Pine View Manor in Stanberry, Missouri.
Shortly after D.N.'s placement in Missouri, his guardian transferred his federal Title XIX benefits to the State of Missouri. After he had qualified for Missouri Title XIX, Iowa canceled his Iowa Title XIX benefits. The DHS closed its file on D.N. and provided him with no more services. In addition to receiving Title XIX through Missouri, D.N. received services through various Missouri state programs which were paid for by Missouri. Neither Iowa nor Decatur County paid for any services he received after he was moved to Missouri. Sometime after D.N. went to Missouri, his parents moved to Colorado.
D.N. remained in Missouri for five and one-half years before he was abruptly transported back to Decatur County and literally dumped at the sheriff's office with all of his belongings. D.N.'s guardian lived in and administered the guardianship and conservatorship in Decatur County. She also maintained checking and saving accounts for him in Decatur County. When she placed D.N. in Pine View Manor in 1989, she intended for him to remain in Missouri as a resident of that state.
On April 12, 1991, four days after D.N.'s return to Iowa, the judicial hospitalization referee found him to be "seriously mentally impaired" and ordered him hospitalized pursuant to Iowa Code chapter 229. Later, he was placed at Hillside Manor in Glenwood, Iowa.
Decatur County intervened in the hospitalization proceedings, asserting that D.N.'s legal settlement is not in Decatur County. The State also intervened, arguing that Decatur County is the county of legal settlement. Both intervenors moved for summary judgment. The court concluded there were factual questions as to (1) D.N.'s mental capacity to determine his domicile and (2) whether D.N.'s guardian intended to establish his domicile in Missouri.
The case was submitted to the court on the summary judgment record, including an agreed clarification of the statement of facts, and certain other factual materials. The court found D.N. did not have the mental capacity to establish a domicile. The court also found D.N.'s guardian intended that his relocation in Missouri would be permanent. The court held D.N. had "removed from this state," under Iowa Code section 252.17 (1993), for more than one year and therefore lost his legal settlement in Decatur County. The court concluded that Pine View Manor was a "community-based" facility but that subsection 252.16(8) relating to persons receiving treatment or support from any community-based provider did not apply to placements with out-of-state community-based providers. Because D.N. had no legal settlement in the state, the court held that the State is liable for the costs of his care. The State appeals and the County cross-appeals.
D.N. passed away while this appeal was pending. The intervenors made a joint application for limited remand to the district court, which we granted. On remand, the court found that D.N. died on February 19, *827 1993 and that $29,121.51 is the outstanding balance due for his care in Iowa.

II. Scope of Review.

This case was initiated under Iowa Code chapter 229, which deals with hospitalization of mentally ill persons. When there is a dispute as to a legal settlement of a person committed for hospitalization due to mental illness, the action is tried as in equity. Iowa Code § 230.12. Here the intervening parties chose to resolve the issue of legal settlement by intervening in the hospitalization proceeding. The action was equitable in nature and our review is de novo. Iowa R.App.P. 4.

III. Legal Settlement.

A. Section 252.17.
We conclude, as did the district court, that D.N. lost his legal settlement in Decatur County during the five and one-half years he spent in Missouri. Iowa Code section 252.17 provides: "A legal settlement once acquired shall so remain until such person has removed from this state for more than one year or has acquired a legal settlement in some other county or state." The State argues that because D.N. left the state for purposes of treatment, not personal choice, he has not "removed from the state" as that term is used in section 252.17.
The State has the burden of proof to establish that legal settlement was not lost by D.N.'s removal from the state. See State ex rel. Palmer v. Hancock County, 443 N.W.2d 690, 691 (Iowa 1989). "Legal settlement" is a concept used to allocate the financial responsibility for care of certain individuals between the state and the county. It is used in the context of public care of indigents and other persons such as the mentally retarded and mentally ill. Id. at 692; see also Iowa Code ch. 222; Iowa Code ch. 230; Iowa Code ch. 252. Legal settlement is similar to the concept of domicile, State ex rel. Palmer v. Dubuque County, 473 N.W.2d 190, 192 (Iowa 1991), but it is not synonymous with "domicile" or "residence." Hancock County, 443 N.W.2d at 692. Therefore, the mere fact that D.N. resided in Missouri for five and one-half years is not, in itself, sufficient to change his legal settlement.
In Hancock County we said:
Two things would concur in the acquiring of a settlement in a given county by a poor person: First, personal presence in a fixed and permanent abode, or permanency of occupation as distinct from lodging, boarding, or temporary occupation; and, second, an intention to there remain, without any present intention of removing therefrom.
Hancock County, 443 N.W.2d at 692 (quoting Cass County v. Audubon County, 221 Iowa 1037, 1041, 266 N.W. 293, 295 (1936)).
Iowa Code section 252.17 provides that legal settlement shall remain "until such person has removed from this state for more than one year." Removal is generally considered to be a change in domicile. Hancock County, 443 N.W.2d at 692. A new domicile is obtained by the occurrence of three things:
(1) A definite abandonment of the former domicile;
(2) Actual removal to, and physical presence in the new domicile; [and]
(3) A bona fide intention to change and to remain in the new domicile permanently or indefinitely.
Id. at 693 (citation omitted).
D.N. went to Pine View Manor because it was the only facility that would accept him for long-term placement. Not only was he physically absent from the state for more than a year, but the intent was that he would remain at Pine View Manor permanently. It was stipulated that the guardian and conservator "intended for D.N. to remain in Missouri as a resident of Missouri when she placed him in Pine View Manor in Missouri in November of 1985." A guardian may change the residence of a ward to another state if done in good faith and for the best interest of the ward. In re Waite, 190 Iowa 182, 188, 180 N.W. 159, 161 (1920). Although the guardian's intent to change his domicile could not, by itself, be determinative on the issue of D.N.'s legal settlement, the guardian's intent coupled with other facts in this case does establish a change in his legal settlement. None of D.N.'s possessions remained in Iowa; his parents, with whom he *828 maintained contact, no longer lived in the state; his Title XIX benefits were transferred to the State of Missouri; and Missouri provided financial support for other services he received while he lived there.
The only contacts D.N. had with Iowa were the banking accounts that the guardian maintained for him and the administration of his guardianship and conservatorship. The State argues these facts support its claim that there was no intent to change D.N.'s legal settlement. The circumstances operated mainly for the personal convenience of the guardian; and while they should be considered, they are not conclusive on the question of residence and are even less persuasive on the separate question of legal settlement. Cf. Hancock County, 443 N.W.2d at 693 (filing of income tax returns in Iowa after leaving the state and probate of father's estate in Iowa not conclusive on issue of legal settlement and residence). We conclude that D.N. "removed from this state" for more than one year under section 252.17 and therefore lost his legal settlement in Decatur County.

B. Subsection 252.16(8).
The State argues that Iowa Code subsection 252.16(8) prohibits D.N. from losing legal settlement in Decatur County while he was being treated at Pine View Manor. Subsection 252.16(8) provides:
A person receiving treatment or support services from any community-based provider of treatment or services for mental retardation, developmental disabilities, mental health, or substance abuse does not acquire legal settlement in the host county unless the person continuously resides in the host county for one year from the date of the last treatment or support service received by the person.
The district court held, as a matter of law, that subsection 252.16(8) does not apply to facilities based outside of Iowa. This subsection was not enacted until 1987 and does not apply retroactively. Dubuque County, 473 N.W.2d at 191. Because D.N. moved to Missouri in 1985, he lost his legal settlement in Decatur County before subsection eight was enacted. Therefore, this subsection is not applicable to D.N.'s situation and we need not address whether the subsection would apply to out-of-state community-based providers.

IV. Conclusion.

D.N. lost his legal settlement in Decatur County due to his removal from this state for more than one year. Because D.N. did not have legal settlement in any Iowa county when he was returned to Iowa, the State is liable for the cost of his care. Consequently, we need not reach the issues raised by the County in its cross-appeal.
AFFIRMED.